Mitchell, J.
When the child was born the mother wa in very feeble health, and the father was unable to support it; on these accounts she was placed with her father’s father before she was a year old; there she has continued to live until she has attained the age of nine years, and, as might *578 be expected, she has become attached to her grand parents, and unwilling to leave the home in which she has been brought up. In the meanwhile her father has died, and the ■mother’s father having also died has left ample means of support both to the child and to her mother; and.the latter is anxious to have the charge, of her child and to bring her up under her own care, that, by receiving her.attention and kindness, and associating with her and her .other daughter, this child might form an attachment to. both. The fact that tjie child prefers her grandfather to her .own mother and her own sister,' is an argument for changing her home, that her affections may b.e restored .to their natural channel, and that she may learn (by doing and receiving, acts of kindness to and ■ from those who are most nearly related.,to her) to love them most. Although the grandfather, procured himself to be appointed,- by the surrogate, the guardian of the person and estate of.the child, that does not interfere with.the power of the.court.of chancery to control its custody. The father is the natural.and. legal-guardian of the .child; still, the court will,- in a. proper case, interfere even, with his control. The mqtive to the exercise of this power is the benefit of the child,, and is. not to be defeated by one having a.mere legal title to the. custody of the child,, any more than it would be defeated, if the legal guardian should, abuse his trust. The court of chancery acted as the guardian of all infants; this was one of .its most. sacred, and most worthy and most important duties. Whatever might have been the origin of this power in England, it- passed to and was exercised by our court of chancery, without any dispute as to its jurisdiction.
It is specially important that the court should always be open to hear such matters, and accordingly this was one of the. matters which were .heard -by the chancellor at chambers, even in contested cases. The. same power, with the same .right and obligation to; exercise it at all times, has devolved on the supreme court, and may be exercised by *579 the justices acting as a court at their chambers as well as at the stated special terms. The constitution is express that the supreme court shall have general jurisdiction in law and equity. (Art. 6, § 3.) Part of this “jurisdiction” of the court of equity was to exercise its powers at all times, although it also had * stated terms; and' thus the constitution devolved on the supreme court," until it should • be altered pursuant to the power vested in the legislature; to alter and regulate the jurisdiction and proceedings in law and equity." (Const., art. 6, § 5.) It needed no further legislation to vest this power in the supreme court; it was transferred there by the constitution, and continues there until it shall be taken away by some express or clear provision of law. So far from doing this, the legislature has confirmed it. The judiciary act of 1847 declares that the supreme court shall possess the same1 powers and exercise the same jurisdiction as was then possessed -by the supreme court and court of chancery; and that the-justices of said court shall-possess the powers'and exercise the jurisdiction then possessed by the justices of the supreme court, chancellor, &c., so far as the powers and jurisdiction of said courts and officers should be consistent with the constitution and the provisions of that act. (Laws of 1847, 323, § 16.) Certainly there was no intention in this law to abridge any of the powers exercised before by. the chancellor, or to prevent the justices of the present supreme-court from exercising any powers which the chancellor before exercised, and in the manner and at the times in which he exercised it. Unrestricted as his jurisdiction was as to time" and place, so it was to continue and to pass to the present supreme court and its justices. Not one, it is believed, ever doubted that this was the true construction of the law so long as the court acted under the judiciary act alone'; and it cannot be doubted that this construction was.acted on in innumerab' e instances. Has the Code, then, made any alteration in this respect? It has not repealed this part of the judiciary act *580 that still remains in force, and is a recognition of the powers which are daily exercised by the court. The Code does not profess to limit the powers of the court, nor to define all the cases in which it may act, any more than it professes to furnish a complete guide for the courts in all cases of practice or pleading which can occur. It lays down certain rules of practice and pleading, and so far as those rules extend it is absolute; but, in cases left unprovided for by the Code, th'e courts are left to their former practice as their guide. So it also provides for certain special and general terms of the court (Code, §§ 15, 17); but this does not interfere with the powers of the court to act in equity matters at other times and places. . A like provision was made, under the old system, for stated or special terms of the court of chancery (2 R. S., 176, §§ 48, 51, 53, 56), yet its power to be always open still remained in force. This was part of its jurisdiction, or, as the term implies, of its power “ to declare the law,” which was expressly preserved by the judiciary act. The special terms' are prescribed, not to prevent the former practice of the court in equity cases of .being ever open for them, but to impose a special duty on the judges then to be present at a.certain place to hear everything that might be lawfully brought before them, without the necessity of a previous application to the judge, as is necessary when he hears the case at chambers.
The judgment should be affirmed, as well on the merits as on the question of regularity.