IN THE MATTER OF THE ARBITRATION BETWEEN "THE NATIONAL BANK OF THE REPUBLIC" AND "THE FIRST NATIONAL BANK OF THE CITY OF NEW YORK," RESPONDENTS, AND ROBERT L. DARRAGH, APPELLANT.

*Award* — *will be set aside if the arbitrators receive evidence in the absence of the parties* — *when the misconduct of an arbitrator may be shown by the affidavit of one of his associates who refused to sign the award.*

Where, after a case has been closed, one of three arbitrators produces and exhibits to the others, in the absence of the parties, written testimony signed by a competent witness, which relates to one of the controverted issues, the award should be set aside if it could by any possibility have been affected by the evidence so received.

The fact that the strong preponderance of the testimony seems to show that the new evidence was not received or considered by the arbitrators in making their award will not be sufficient to sustain it.

A motion to vacate an award for the wrongful and improper behavior of the arbitrators may be made upon an affidavit of one of the arbitrators, who refused to sign the award because he considered the conduct of the other arbitrators to be illegal and unfair.

APPEAL from an order made at a Special Term refusing to vacate an award.

*Joseph H. Choate,* for the appellant.

*Fisher A. Baker,* for the respondents.

BRADY, J.:

It appears that on the 8th of May, 1880, the appellant entered into a building contract with the respondents, which provided for the settlement by arbitration of all questions or disputes arising during the progress of the work ; and certain questions having arisen respecting the settlement of the accounts three arbitrators were appointed pursuant to the provisions of the contract, under a written stipulation dated March 3, 1882, who were to adjust their differences.

The appellant claimed that there was due to him the sum of $46,008.83 and a sum of interest in addition. The respondents asserted that there was nothing due owing to their right, as they contended, to have certain deductions made, and which deductions consisted of five separate items specifically set forth in the submission.

The arbitrators were also invested with power to award the payment of the costs and expenses of the arbitration, to be paid by the parties in equal parts. All the testimony having been taken, the matter was finally closed on the 29th of April, 1882. On the thirteenth of May following an award to the appellant of $26,524.76 was made, which was signed by but two of the arbitrators, Messrs. F. C. Withers and O. W. Norcross, the third, Leopold Eidlitz, refusing to sign the award, as he asserts, for the reason of his conviction that the conduct of the other arbritrators was illegal and unfair.

One of the questions, and it would seem an important one, to which the attention of the arbitrators was called and to which the deduction related, was that of the construction of certain arches and ceilings in which cracks and deflections had made their appearance, and for which, as they resulted from the alleged imperfect performance of the contract on the part of the appellant, the respondents claimed an allowance. There can be no doubt of the importance of this feature of the controversy. After the case was closed, and in the absence of the parties, one of the arbitrators, Mr. Withers, produced and exhibited to the other arbitrators, it is claimed, certain written testimony signed by a competent witness, as to the solid and intact constructive appearance of certain other arches in another building, which were alleged to be constructed of the same material as that which the appellant was required to use in the construction of those under consideration. The occurrence of this incident does not seem to be denied by the arbitrators, although as to the motive for creating and using it and as to the circumstances of its production they may differ. The appellant affirms that he was never given an opportunity to meet this evidence or to rebut it, although he believes that he might have established its falsity. A motion was made upon this circumstance, and it would seem upon it alone, to vacate the award, which was denied, the learned justice who presided when it was made disposing of it in an opinion which is as follows :

" The strong preponderance of testimony seems to be to the effect that the alleged new evidence was not received or considered by the arbitrators in making their award."

The appellant insists that the award is void because it is not

coextensive with its submission, five questions of difference having been distinctly stated which the arbitrators were to determine separately.  But it is not deemed necessary to consider this proposition for the reason that it was not presented for the consideration of the court below, the motion there made, as already suggested, being predicated entirely of the misconduct of the arbitrators in using an item of evidence which was given after the case was closed and in the absence of the parties and without their consent.  It is insisted by the respondents that the affidavit of the arbitrator disclosing the alleged misconduct of his associates cannot be received; and this is founded upon a proposition which has been sustained by the adjudications in this State, although perhaps somewhat in conflict, that arbitrators like jurors shall not be permitted to impeach their award.  But these cases have no application to the present motion, for the reason that Mr. Eidlitz, the arbitrator upon whose evidence the appellant relies, refused to sign the award.  It is, therefore, not within the principle of the cases referred to.  He is not engaged in the effort to impeach his award, but assails an award in which he might have participated, but in which he refused to take part and for the reason that it was against his convictions as to the rights of the appellant.

In the case of *Doke* v. *James* (4 N. Y., 575) it was said: "The award of February twenty-fifth upon the matters submitted was conclusive between the parties until set aside, and no parol testimony, not even of the arbitrators, was admissible to contradict or impeach it."   And this statement of this rule, as one prevailing in this State, was sustained by numerous cases cited.

In the case of *Briggs* v. *Smith* (20 Barb., 418), in which the case just cited was considered, it was declared, " and the chancellor said, in *Campbell* v. *Western* (3 Paige, 126, 137), 'that an arbitrator who has signed an award cannot be allowed to contradict his solemn act and to say that he did not concur in it any more than a juror who has concurred in a general verdict would be permitted to swear he was not convinced it was right."

This rule, however, is not absolute, as will be seen by reference to the following cases: *In Matter Williams* (4 Denio, 194, 196); *Smith* v. *Briggs* (*supra*); *Van Cortlandt* v. *Underhill* (17 Johns., 405).

As already suggested, however, these cases have no application

here, for the reason that the arbitrator upon whose testimony and statement the appellant relied, did not unite in the award, but on the contrary refused to do so.

It has already been suggested that there is no doubt about the incident upon which the appellant relies, and for that reason the award should be set aside. The possibility that two of the arbitrators, or that either of them was influenced by the evidence objected to, is sufficient to demand a reconsideration of the controversy.

In *Drew* v. *Drew* (2 Macq. Scotch App. Cas., 1, 8), which was a case in which evidence was received during the absence of the parties, the lord chancellor held that an arbitrator misconceives his duty if he, in the minutest respect, takes upon himself to listen to evidence behind the back of a party who is interested in controverting, or is entitled to controvert it. And PATTERSON, J., *In re Plews and Middleton* (6 Q. B., 845, 852), said : " It is true that the erroneous proceeding related to a very small matter; but if it were sanctioned in any instance, the referees in every case of joint arbitration might agree to carry on their inquiries apart."

In that case it appears that several arbitrators each separately examined a witness in relation to a small matter of difference. And COLERIDGE, J., said : " To uphold this award would be to authorize a proceeding contrary to the first principles of justice. . The arbitrators here carried on examinations apart from each other, and from the parties to the reference ; whereas it ought to have been conducted by the arbitrators and umpire, jointly, in presence of the parties." And this question has recently been considered in the case of *Fudickar* v. *The Guardian Mutual Life Insurance Company* (62 N. Y., 392), in which the court say (at page 405): " But any violation of natural justice by an arbitrator, such as receiving material evidence from one of the parties, without the knowledge or consent of the other, should be condemned, and in several cases awards have been set aside for this reason." The learned justice delivering the opinion of the court cited the cases upon which the proposition rests.

Section 2374 of the Code specifies the cases in which an award may be vacated, and the first subdivision of that section is : " Where the award was procured by corruption, fraud or other undue means."

The authorities to which reference has been made, and the principle which they establish seem to demonstrate that the receipt of evidence which by any possibility may have influenced the award, must be regarded as an illustration of undue means.

It cannot be understood why Mr. Withers should have sought the evidence which was obtained after the case was closed and exhibited it to Mr. Eidlitz, one of his associate arbitrators, unless he considered it important. He says in his affidavit that about two days before the final meeting he saw Mr. Radford and .asked him to make the memorandums set out in the affidavit of Mr. Eidlitz, that he might convince Eidlitz that he (Withers) was not mistaken as to the width of the arches which he (deponent) had seen, and that he made the diagram and got the memorandum for no other purpose than to convince Eidlitz that he had made no mistake in saying that he had seen arches in a house mentioned of greater than six feet span ; that he did not intend to use said memorandum as testimony in the case, and did not get it for that purpose ; and, further, that he did not say, as charged against him, that he deemed it proper to use in said case. It is quite apparent that it related to one of the issues, if not the chief issue, in controversy between the parties ; and if it was used for any purpose to produce any result affecting the fact, or was likely to do so, the award should not be permitted to stand.

The learned justice in the court below disposed of the application on the proposition that there was a preponderance of evidence to the effect that the new evidence was not received or considered by the arbitrators in making their award. This does not meet the question presented affecting the validity of the award. It is whether improper evidence has been received, which by any possibility may have affected the conclusion at which the arbitrators arrived who made the award. In this case there is no doubt that the evidence was received, and it is impossible for the court to say that it did not affect the conclusions at which they arrived.

For these reasons it is thought that the award should be vacated and the order appealed from reversed. ●

DAVIS, P. J., and DANIELS, J., concurred.

Order reversed.