# Anonymous.

### Bill in Equity for Divorce.

1. *Custody of children, on divorce or separation*—Under the statutes of this State (Rev. Code, §§ 2367, 2397), the Chancery Court has power, in cases of divorce, or voluntary separation between husband and wife, to commit the custody and education of the children to either parent ; and in the exercise of this power, the court regards the welfare and interest of the children as the paramount consideration, not recognizing any superior right on the part of the father, nor necessarily excluding the guilty party, though regarding with greater favor the claim of the innocent.

2. *Same.*—Although the statute (Rev. Code, § 2397) speaks only of "voluntary separation," it is not confined to cases in which each party has expressly assented to the separation, but must be held to include cases in which the conduct of the husband, though not amounting to legal cruelty, or other cause of divorce, has justified the wife in leaving his house and returning to her father's.

3. *Same.*—The court is always reluctant to deprive the mother of the custody of an infant daughter, and seldom (if ever) does so where misconduct is not imputable to her ; and in this case, while refusing her a divorce, decrees to her the custody of her infant daughter of tender years, the only child of the marriage, as on a voluntary separation.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed by the appellee, on the 31st July, 1874, and sought a divorce from her husband, on the ground of cruel treatment; and she also asked a decree giving her the custody and control of her infant child, a girl four or five years old, the only issue of the marriage, and an injunction to prevent her husband from removing it out of the county. On final hearing, on pleadings and proof, the chancellor refused to grant a divorce, but held that the complainant was entitled to the custody of the child, and rendered a decree accordingly. From this part of the decree the husband appeals, and here assigns it as error.

THOS. H. WATTS, for appellant.—The father has a paramount right to the custody and control of his children, without regard to their sex; and no court, in the absence of statutory provisions, can take away, or interfere with this right,

[Anonymous.]

unless he has forfeited it by some misconduct.—*Ex parte Boaz*, 31 Ala. 425; *Bryan v. Bryan*, 34 Ala. 516, and the numerous cases there cited; *People v. Mercein*, 3 Hill, 405; Schouler's Dom. Rel. 333–43; Bishop on Mar. & Divorce, §§ 642, 643. Here, there is no statute to change this rule of the common law. As no divorce was granted, section 2367 (Rev. Code) has no application to the case; and section 2397 is, in terms, limited to cases of "voluntary separation." There can be no voluntary separation, where the wife has left her husband's roof without justifiable cause—that is, a cause which would entitle her to a divorce.—*Bryan v. Bryan, supra.* Except in the two classes of cases provided for by these sections of the Code, the stern principles of the common law are left in full force and vigor; and the peace and happiness of families, and the highest good of society, alike demand their enforcement. When these domestic difficulties occur, the great object of the courts should be to heal the wounds, and to bring the parties back to a recognition of their duties and obligations. What could better accomplish this, in a case like the present, than to leave the child where the wife ought to be—under the roof of the father and husband?

D. CLOPTON, *contra.*—1. On the subject of cruelty, which, if it did not endanger the complainant's life or limb, certainly affected her health very seriously, and amply justified her in returning to her father's house, the appellee relies on the cases of *Smedley v. Smedley*, 30 Ala. 714; *Hardin v. Hardin*, 17 Ala. 250; and Bishop on Mar. & Divorce, § 454.

2. As to the custody of the child, the question is narrowed down to a choice between the mother and the husband's sister. The character of the mother is above all reproach or suspicion, as proved by many witnesses; and the peculiar unfitness of the husband's sister is shown by her own deposition, as well as by the testimony of many respectable witnesses. When the controversy is thus narrowed down, the best interests of the child concur with the requirements of the law, and point out the mother as the proper custodian.—*Cornelius v. Cornelius*, 31 Ala. 479; *Bryan v. Bryan*, 34 Ala. 521; 2 Story's Equity, §§ 1341 *et seq.*; Bishop on Mar. & Divorce, §§ 633–37.

BRICKELL, C. J.—The original bill was filed by the appellee, seeking a divorce from the appellant on the ground of cruelty, and praying that to her be intrusted the custody of her infant child, a daughter, the sole issue of her marriage, then less than four, and now not eight years of age.

The chancellor, on a final hearing on the pleadings and voluminous proofs, directed not only to the ground of divorce, but to all facts which can be properly considered, in determining to which of the parents the care of the child should be committed, refused a divorce, but decreed the custody of the child to the appellee. The correctness of the decree in this respect is the only question presented on this appeal.

It is insisted that the common law confers on the father a right to the control and management of his children, exclusive of, and paramount to that of the mother, of which his own misconduct, or unfitness to discharge the trusts the right involves, alone can deprive him. It is not necessary in this case to examine into, or discuss the right of the father, as defined at common law. Whatever it may have been, it was subject to the jurisdiction of courts of justice, and to legislative control and regulation. For more than forty years, the statutes of the State have invested the Court of Chancery with jurisdiction to dispose of the custody of infant children, when controversies arise between husband and wife, which terminate in divorce, or in a separation (Clay's Dig. 171, §§ 20, 21 ; R. C. §§ 2367, 2397, 2398) ; and decisions of this court have recognized, as remaining unimpaired by the statutes, the original jurisdiction a Court of Chancery exercised over infants, for their protection and benefit, extending to their removal from the custody of either parent, and transferring it to that person deemed most suitable for the real, permanent interest of the infant.—*Hansford v. Hansford*, 10 Ala. 561 ; *Bryan v. Bryan*, 34 Ala. 516 ; *Striplin v. Ware*, 36 Ala. 88 ; *Lee v. Lee*, MSS.

As an incident to a decree of divorce, the Court of Chancery is by statute authorized to give the custody and education of the children to either parent, as may seem right and proper, having regard to the moral character and prudence of the parents, and the age and sex of the children.—R. C. § 2367. This case may not fall within the letter of this statute, as a divorce was refused. The statute is not dissimilar in terms, and is probably the same in effect, as the subsequent section which authorizes the court, if a voluntary separation occurs, to permit either of the parents to have the custody and control of the children, and to superintend and direct their education, having regard to the prudence, fitness, and ability of the parents, and the age and sex of the children.—R. C. § 2397. If the marriage is dissolved by divorce, some disposition must be made of the children ; so, if a voluntary separation occurs. The right of the father to their custody, as exclusive of, and paramount to that of the mother, is not recognized. While the relation of husband

and wife continued—while the wife was subject to his dominion—it may have been exclusive; and it may be difficult to define or enumerate the cases which would authorize judicial interference with it. The relation being dissolved by the solemn sentence of a court, the exclusive right ceases, and on the court, looking alone to the welfare of the children, is devolved the responsibility of determining their custody. No right attaches to the offended party, successful in obtaining freedom by judicial sanction from the bonds of marriage; and no ban of exclusion is imposed, because of the dereliction of the party guilty of a violation of marital vow and duty. The claim of the innocent party must, of necessity, be regarded with the greater favor; for a divorce cannot be granted without misconduct affecting the integrity of the party guilty of it. Consulting alone the welfare of the child, it may, nevertheless, be right and proper to commit to such party its care and education. It may be that from such party, either husband or wife, the training of the child, morally and intellectually, so that it will become a virtuous and useful citizen, can be more reasonably anticipated, than from the other party, however free from blame in causing a dissolution of the marriage. The same considerations control the court, when a voluntary separation occurs between husband and wife. The welfare of the child must be consulted as paramount, and it must be committed to the one parent or the other, as the evidence may justify the conviction that its benefit, present and prospective, demands.

It is urged that, in the present case, the separation was not voluntary—that the appellant did not assent to it, but that the appellee, without cause, wilfully abandoned him. The statute is in terms limited to a *voluntary* separation; but we do not suppose it was contemplated each party should, in words, express assent to it. The assent may be implied, as it is often implied in reference to contracts and agreements. A husband may pursue towards the wife, or the wife towards the husband, a course of conduct compelling a separation; and it would be idle to say such was not the result anticipated or intended. Continuous accusations against the virtue of the wife may be made, wounding her pride, chilling her affections, blighting her hopes, embittering every hour of her life, until, if all self-respect is not crushed, she must abandon the society of her husband, and seek relief from the tortures he inflicts. It would be vain for him to say, that his wife's abandonment was voluntary on her part, and involuntary as to himself.—*Hardin v. Hardin*, 17 Ala. 250. Such a case has occurred, and may occur again; and when it shall, it will be a voluntary separation, within the meaning of this

statute.   The wife chooses separation as her only hope of peace, and the only mode of maintaining her self-respect and reputation ; and the husband must intend and assent to the natural consequences of his misconduct.   So, if the husband should, though residing under the same roof, withdraw himself from the society of the wife, neglect her in sickness, give countenance or currency to the circulation of reports affecting her reputation, commit her only child to the care of those hostile to her, and whom he knew were endeavoring to estrange it from her in its very infancy, subject to the control of those who he knew had but little, if any, sympathy or respect for her, if they were not positively inimical—if this course was persisted in, until the wife lost all hope of reclaiming his affections, regaining his respect and confidence, and restoring herself to her proper position, and left him for a home with her parents ; if he makes no effort to induce her to return, and no offer of better treatment, his assent to the separation must be implied.   We cannot read this record, without the unpleasant conviction that such is the character of this case.   Passing all facts of which the evidence may be in conflict, looking only to the undisputed facts, the appellant must have desired and effected a separation, and practically it existed, so far as he was concerned, before the appellee left his roof.

We avoid all narration of the facts, that neither party, or their friends and relatives, may be wounded, and the chances of reconciliation rendered hopeless.   Yet, it is due to the appellee to say, that we do not find she has ever been wanting in affection and duty to the appellant.   It is probable that she was not congenial to his relatives, by whom he surrounded her ; and without reflection on her or them, it is certain that from the want of congeniality this difficulty arose.   The husband, if he had consulted his own happiness, his duty to the appellee, and the welfare of his child, ought to have made greater efforts to prevent this dissimilarity from passing into aversion ; or, if that could not be avoided, he should have removed his wife from its influence. It is the injunction of divine and human law, that a man shall " leave his father and mother, and shall cleave unto his wife."   The mother resides with her father, who is of high character, and offers her in her desolation a home and protection under his roof, for herself and child.   The education and training of the mother, the care she has had formerly of her younger brothers and sisters after the death of her mother, the blamelessness of her past life, leave no room to doubt her fitness for the nurture and education of the child. All must feel, that no greater calamity can befall an infant

daughter, than a deprivation of a mother's care, vigilance, precept and example. A mother's sympathy and culture exerts an influence on her life and character, perceptible only in its results. Therefore, courts are reluctant now to deprive her of the custody of her infant daughters, and but seldom, if ever, do so, unless misconduct is imputable to her.—Lead Eq. Cases, 1506–1528.

Another material consideration is, that if the child is committed to the care of the appellant, he must rely on his mother, or sister, to take charge and superintendence of it. However well fitted they may be for the training of children, their fitness is not superior to that of the mother; and it is apparent their influence would result in the estrangement from her, if possible, of the affections of the child. In fact, the controversy is, whether the child shall be committed to the care of the appellant's sister, or its mother. The discretion with which the statute clothes the chancellor, in view of the sex and age of the child, and all the circumstances, was properly exercised in preferring the mother as its natural guardian, to the father; and his decree must be affirmed.

STONE, J., not sitting, having been of counsel.

