LUCRETIA JONES, PLAINTIFF IN ERROR, VS. AGNES R. HARMON, DEFENDANT IN ERROR.

1. A person to whom a mother has committed the custody and care of her child to raise and educate as the former's own child, the child having no father, is entitled to such custody as against a mere stranger having no legal right thereto, and the right of the former to the custody will be enforced if she is a proper person to have it.

2. The desires of a child only four years old in favor of one not entitled to her custody should not be given any effect against the legal right of a person entitled to her custody, where the latter is a proper person to be entrusted with the child.

3. The treatment of a child by one not legally entitled to her custody, is an immaterial question, if the person entitled to its custody is one fit to be entrusted therewith.

Writ of error to the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*John Wallace* for Plaintiff in Error.

No counsel appearing for Defendant in Error.

RANEY, C. J.

This proceeding is one of *habeas corpus*, in which the petitioner, Lucretia Jones, claims that she is entitled to the custody of Lottie Morgan, a minor, and that she is illegally deprived of such custody by Agnes R. Harmon. The petition was in effect denied by the judgment of the Circuit Judge, and the petitioner sued out a writ of error.

The defendant testified that she resides in Jacksonville; that she raised Polly Morgan, who is her niece, at her house, and also Lottie near up to her present age; that about four months prior to the day the testimony was taken, Polly gave the child to petitioner as her own child, to raise and educate as her own, and not as an apprentice or servant, and she accepted her as such and went to Mrs. Harmon, who she says he is a white person, and told her she wanted her as such, but she would not let her have her, and this is why she instituted these proceedings; that Lottie has no father, and Polly, the mother, resides at Waycross, in Georgia; that she, petitioner, has a lot in Jacksonville one hundred and five feet each way, and other real estate, with six houses upon that on Main street, which she rents out, and that she is fully able and willing to take the child as her own child, and educate her and raise her up as a lady as she would one of her own children.

The defendant introduced her husband as a witness, who testified that his wife wanted a little girl, the little girl to stay with her, and told one Thomas Lancaster to look out for a little girl for her; that shortly after this, Polly Morgan came to their house and told them that her aunt, the petitioner, had driven her and her child out of her house, and she wanted his wife to take Lottie as an apprentice; that his wife consented to this proposition and entered into an agreement to take the child; that the agreement was in writing, and was signed by Polly and his wife, and was approved by the County Judge of Duval county;

that he, witness, did not sign the written agreement, but consented to it verbally, and his wife took the child.

The bill of exceptions states that the defendant's offer to prove that the mother of Lottie had told that petitioner had driven her and her child out of her house, and that defendant held the child by reason of the writing of apprenticeship, was objected to, the former on the grounds of hearsay evidence, and the latter because the writing was the best evidence, but the judge overruled the objection, and petitioner excepted; but it is further stated in the bill of exceptions that the judge did not consider the evidence objected to in coming to a conclusion, and forming his judgment.

The testimony of Harmon as to the statement of the mother that the petitioner had driven her and the child out of her house, was hearsay, and not admissible against petitioner, and the written articles of apprenticeship were the best, and until grounds for the use of secondary evidence of its contents shall be shown, are the only proper evidence of such contents, and for these reasons, doubtless, the Circuit Judge excluded the evidence in forming judgment. Barring this evidence there is no proof of the terms upon which the defendant claims to hold the child, or of authority to retain her against the petitioner. The mere fact that the mother brought the child and left her with defendant, is not sufficient to overcome the petitioner's right to possession, as shown by her testimony. As between a

third person and the petitioner, the mother had the right to make the petitioner the custodian of the child, if the third person had no prior or superior right; and we think that the petitioner, as against the defendant, was, in the absence of other testimony than that shown by the record, and not excluded by the judge in his consideration of the case, entitled to the custody of the child. The petitioner's custody, to say nothing upon the question whether or not she could under her agreement with the mother retain the custody of the child as against the mother's will, was as against any stranger having no superior right, the mother's custody, or at least one with the mother's approval and consent, and should be enforced in her favor against such stranger, unless it should be shown that she was an improper person to have such custody. There is, however, we may remark, no testimony tending to show this. The hearsay statement as to her driving the mother and child from her house cannot be considered. The circumstances of it are moreover not shown. The tendency, if not the effect, of the testimony, is to show pecuniary ability in the petitioner, and the evidence at least indicates a disposition to carry out her agreement with the mother.

It appears that the Judge examined the child apart from the witness Harmon, and, we assume, from the other parties interested in this controversy, and that she said she was treated kindly by the Harmons, given plenty of clothes and a good place to sleep ; that Mrs.

16

Harmon did not whip her; and that a scar she had over her eye was caused by her falling down on a piece of wood; that her work was carrying out chambers and spittoons, and that she wanted to live with Mrs. Harmon and her husband, and did not want to go with her aunt.

Considering the age of the child, only four years, we do not think her desires should have influenced, if they did, the judgment in this case. She was too young to know what was best for her, and her desires should not be permitted to affect the legal right of the petitioner, if the latter is a proper person to have the care and custody of her. Regina vs. Clark, 40 Eng. Law & Eq,, 109; Rust vs. Vanvacter, 9 W. Va., 600; State vs. Richardson, 40 N. H., 272; Henson vs: Walts, 40 Ind., 170; *In re* Goodenough, 19 Wis., 291. We are not unmindful that there is no arbitrary age at which competent discretion is presumed to exist or not to exist in infants for the purpose under discussion, but our judgment is, that an infant of four years should not, on account of her preference, be kept from the person legally entitled, and fit and able to take care of the child, and given to one not entitled to her. It is true that in the case of Doyle, Clarke's Chan. Rep., 154, an infant six years old appears to have been examined by the Vice Chancellor, but we do not think it can be said, after reading the case, that the infant's choice controlled the judgment of the court.

If the petitioner has the legal right to the custody of the child, and is a person who, upon the principles

Lucretia Jones v. Agnes R. Harmon.—Opinion of Court.

governing in such cases, should be entrusted with it, the question of the treatment of the child by the defendant will become entirely immaterial, but on the other hand, if it shall be found that the defendant is entitled to her custody, there is enough in this record to suggest careful inquiry into the treatment which the child may have received at her hands, both prior and subsequent to the former hearing of the cause, before awarding her the custody. This is suggested by the whippings with the so-called cat-o-nine-tails, or "leather strap, split into prongs, fastened on a piece of broom handle." testified to by at least four witnesses, and by other testimony, and these whippings also raise doubts as to the correctness of the child's statement, that Mrs. Harmon did not whip her, and questions as to her freedom from a lingering influence of fear or mental duress when testifying, though at the time she was under the protecting care of the court. The indulgence of bad temper may under some circumstances be a material item of testimony in cases of this character.

Questions as to the validity of the articles of apprenticeship as made by a married woman, and whether the terms of the same are in compliance with our statute, and legal, (McClellan's Digest, pp. 103, 104; Exparte Turner, Chase's Decisions, 157, S. C. 1 Abbott's U. S. Rep., 84,) and whether the husband was a competent witness in behalf of his wife, suggest themselves, but they have not been argued, and should not be decided.

A new trial should be granted, and it will be so ordered.