In the Matter of the Guardianship of MARY and MAGGIE LALLY, Minors, etc., Appellees, v. NELLIE FITZ HENRY, as Guardian of said Minors, Appellant; MICHAEL LALLY, Appellee, v. JAMES and MARY SULLIVAN, Appellants.

1. **Parent and Child:** CUSTODY OF MINOR· CHILDREN: RIGHTS OF PARENTS. Notwithstanding the provisions of section 2241, of the Code, that parents are the natural guardians of their minor children, and are equally entitled to their care and custody, the right of the parent to such custody is not absolute, but is to be determined, where such question is at issue, in view of the best interests of the child.

2. ——: ——: ——: ABANDONMENT: ADOPTION. The plaintiff being about to leave the town where he resided for a distant city, took his three children, aged two, four and six years respectively, to a neighbor's, stating that he would send for them in a few days. He did not send for them, however, and during an absence of ten weeks contributed nothing to their support, but wrote proposing to distribute the children around to three different persons. The defendants having adopted the youngest of said children during the plaintiff's absence under sections 2308 and 2309 of the Code, providing for the adoption of abandoned children, the plaintiff commenced an action to have the articles of adoption annulled, and for the possession of the child. *Held,* that in view of the above circumstances, and

of the fact that the plaintiff had no home for the child, but proposed to place it in the care of a friend, who would be under no obligation to keep it for any definite time, the child should be left with those by whom it had been adopted.

3. ———: ———: ———: HABITUAL DRUNKENNESS OF PARENT. Habitual drunkenness on the part of the parent is sufficient ground in such a case for denying him the possession of his child, even though he may have promised to reform.

4. PRACTICE IN SUPREME COURT: FINDINGS OF TRIAL COURT: EVIDENCE. While upon an appeal in a law action tried to the court the findings of the district court have the force of a verdict of a jury, if such findings are not supported by the evidence the cause will be reversed.

*Appeals from Lee District Court*—Hon. J. M. Casey, Judge.

WEDNESDAY, MAY 11, 1892.

The first cause stated is a proceeding to annul and set aside the appointment of the appellant as guardian of the minors Mary and Maggie Lally. The second is a suit in equity to annul and set aside the articles of adoption whereby James and Mary Sullivan, the appellants, hold possession of the minor Lizzie Lally. The court below ordered the children turned over temporarily to their father, Michael Lally, and continued the cause for final determination. From this order both the guardian and James and Mary Sullivan appeal. Both causes were tried below to the court without a jury, and it is agreed that both shall be tried together here on the same evidence.—*Reversed.*

*Parsons & Dolan,* for appellants.

*D. F. Miller, Sr.,* for appellee.

KINNE, J.—March 10, 1890, Nellie Fitz Henry was appointed and qualified as guardian of the minors, Mary Lally, aged six years, and Maggie Lally, aged four years, on the grounds that Michael Lally, their father, had abandoned them; that he was an habitual

drunkard, and an unfit person to have the control and custody of said children. On the same day Lizzie Lally, then two years old, and a daughter of said Michael Lally, was adopted by James Sullivan and Mary Sullivan, his wife. Articles of adoption were duly filed for record, being signed by James and Mary Sullivan and the mayor of Keokuk, where said minors then resided. March 18, 1890, Michael Lally instituted these proceedings for the revocation of the appointment of the guardian, on the grounds that he had resided in Keokuk for seventeen years; that his wife died August 5, 1889; that he owned a homestead in the city; that he had made arrangement for the care of said children, and that the grounds alleged for the appointment of said guardian were untrue. At the same time he began his suit against the Sullivans, making substantially the same allegations, and attaching thereto the articles of adoption heretofore referred to, and praying that they might be annulled.

The guardian appeared and admitted the residence of the plaintiff; that he had a homestead, which it was averred he acquired by descent. She further avers that he abandoned said children and left the state while under the influence of liquor, making no provision for their support; that they were not in good condition, and showed evidence of want of proper care; that, after such abandonment, the child, Lizzie, was adopted by the Sullivans, and had a good home; that the plaintiff, though absent for over two months, did not contribute anything towards the support of said children; that the plaintiff had been left with ample means by his mother, which he had squandered by excessive drinking and continual intoxication, and that when he left the state he had no property except his homestead and furniture; that he has no means; that the guardian had provided a permanent home in fulfillment of the wishes of the ward's mother, at the Immaculate Con-

ception Academy of Davenport, Iowa, an educational institution, where they are to be cared for, supported and educated free of expense. She also avers that said wards have no estate. She states that the plaintiff has for a long time been given to the excessive use of intoxicants, whereby he had lost his position, and was unfit to have the care and control of said children; that the best interests of the children will be attained by leaving them where they are, and that the plaintiff did not intend to care for said children, but intended to turn them over to the care of others who are irresponsible, and of a different religious belief from said children and their parents.

James and Mary Sullivan answer the plaintiff's petition by a general denial; and also state that they are the only blood relation of the child, Lizzie; that they give her a good home and the same care and love as their own children. They also make the answer of the guardian their answer herein, and plead that they hold the child by the articles of adoption heretofore referred to.

I. The only question involved in these cases is the custody of the three minor children, all under seven

1. PARENT and child: custody of minor children: rights of parent.

years of age. Our statute provides that the parents "are the natural guardians of their minor children, and are equally entitled to the care and custody of them."—Code, section 2241. Also that on the death of one parent the survivor becomes the guardian. *Id.* Section 2242. Notwithstanding the statutory provisions, the weight of modern decisions is clearly favorable to the holding that the right of the parent to the custody of the child, is not absolute. It must be determined, in a case like this, in view of the best interests of the child. That is the controlling consideration. *Bonnett v. Bonnett*, 61 Iowa, 201; *Shaw v. Nachteway*, 43 Iowa, 658; *Drumb v. Keen*, 47 Iowa, 437; *Fouts v. Pierce*, 64 Iowa, 73;

*Jenkins v. Clark*, 71 Iowa, 556. It is said in *Joab v. Sheets*, 99 Ind. 328, that "the question of the custody of the child was one in which the rights of the child were primarily involved, and where those of the parents were of secondary consideration." In *United States v. Green*, 3 Mason, 485, STORY, J., says it is an entire mistake to suppose that the father has an absolute vested right in the custody of an infant. In *Corrie v. Corrie*, 42 Mich. 509, 4 N. W. Rep. 213, it said: "In contests of this kind the opinion is now nearly universal that neither of the parents has any right that can be allowed to seriously militate against the welfare of the child. The paramount consideration is what is really demanded by its best interests." *In re Bort*, 25 Kan. 310, the doctrine announced is that "the best interest of the children is the paramount fact. Rights of parents sink into insignificance before that." *Sturtevant v. State*, 15 Neb. 459, 19 N. W. Rep. 617; *In re Stockman* 38 N. W. Rep. (Mich.) 882. See, also, Code, sec. 2301. This just rule may now be regarded as settled.

II. Now, it is clear that a parent may lose the right of custody by his own voluntary act, by misconduct, and even sometimes by misfortune.

2. ——: ——: ——: abandonment: adoption.

He may lead such a grossly immoral and profligate life, may become so habituated to the use of intoxicants as to be utterly unfit to have the custody of a child, or may by neglect to provide for it justify a court in refusing to place it in his custody. *State v. Bratton*, 15 Am. Law Reg. (N. S.) 359.

Applying the law to the facts first of the equity case, we find that Lizzie Lally was two years old when this proceeding commenced; that she was then adopted by the appellants, James and Mary Sullivan, with the consent of the mayor of Keokuk, as provided by Code, sections 2308, 2309; that the child was treated as having been abandoned by her father, and it was also

alleged he was an habitual drunkard. It will serve no
useful purpose to refer in detail to the evidence, but,
after a careful examination of it, we think it fully
appears that at the time Lizzie was adopted by the
Sullivans, the plaintiff had abandoned all his children.
Before going to St. Louis he took his children to Mrs.
Connor's, stating that he would send for them in a few
days. The children then showed that they had not
been properly cared for. They were substantially
without clothing. The plaintiff had no money. He
was gone ten weeks, and did not send for them nor
contribute anything towards their support. He wrote,
proposing to distribute the children around to three
different persons. Now he wants the Browns to have
them, and expects them, for the rent of his house,
seven dollars per month, to keep and properly support
the children, which service is shown to be worth twenty
dollars per month. It appears that Brown earns one
dollar and fifty cents per day, and has a family of his
own to support. Nor do the Browns agree to keep the
children for any definite time. Surely these and
other facts appearing justify us in the conclusion that
the plaintiff lost all right he had to have the custody of
his children.

In *Giles v. Giles* 46 N. W. Rep. (Neb.) 916, the
court, in a case in some respects much like this, said:
"The testimony shows that he [the father] has no
home of his own; that he proposes to place the child
in the family of a friend. * * * For aught that
appears, they might at any time, in a day, a week, or
a month, abandon the care of the child," etc. So in
this case there can be no assurance that the Browns
will, under the circumstances, keep these children for
any length of time, even if the plaintiff's prayer be
granted. It will not do to take this child from a good
home, and put her in a position of such uncertainty.
What assurance is there, or can there be, from the

evidence in this case that this child of tender years will not, if the plaintiff's wish be granted, be thrown by him on the charities of the world, with no protector, no one to provide her with the necessities of life, or to look after her education and moral training.

III. If, however, it should be conceded that the acts of the plaintiff would not amount to an abandonment of his right of custody, there is yet another reason why he ought not to have the control of this child. It is charged, and, we think, fully established, that the plaintiff is a man of dissolute habits, an habitual drunkard; that he was so long prior to his wife's death, August 5, 1889, and since; that by reason of these habits he was forced to seek employment in some place outside of Keokuk; that he was drunk at a funeral; that he had mistreated the children; that on July 4, 1889, but a month prior to his wife's death, he was driving through the streets with them at a dangerous rate of speed; that his wife had expressed the wish that the children should be placed in a convent, away from their drunken father. Against this testimony and this record we have the assurance of the plaintiff that he had reformed. We are unable to so find from the evidence; and, even if it were so, the reformation is of so recent a date that we should not feel justified in taking this child from a good home with her relations, and turning her over to her father, in view of the experience of mankind as to the probable permanency of such reformation. If this plaintiff had for a reasonable length of time shown his ability to keep sober and to provide for his children, the case might be different. But his dissipation continued after his wife's death, and the court below found that, unless there was a reform as promised on the plaintiff's part, he would have no legal or moral right to the custody of his children. To our minds, the habits and conduct of the plaintiff bar his right to

3. ___: ___: ___: **habitual drunkenness of parent.**

the custody of this child. The interest of the child being the controlling question, and in view of the fact that Lizzie is now well cared for, and has a good and permanent home with the only relatives she has, other than her father, it seems certain that we shall promote her interest by letting her remain with those who have adopted her.

IV. This case between the plaintiff and guardian was tried as a law action, and the court found, among 4. PRACTICE in other facts, that the plaintiff had quit supreme court: find- drinking; that the guardian was a worthy ings of trial court: evi- and proper person to direct the education dence. and moral training of the minors; that the plaintiff had contracted an unfortunate habit of dissipation, and to such an extent as to render him unfit to properly care for his children; that, unless there is a reform as promised, the father would have no legal or moral claim to the custody of his children. It is evident that the learned judge below was led to believe that the plaintiff had quit drinking, and that he relied on the plaintiff's promised reformation. In this, we think, he was in error. The testimony shows that the plaintiff continued his dissipation up to the very day he left his children and went to St. Louis. There is not the slightest thing in the case to hang a hope of reformation on except his naked promise to quit. The findings of the court below stand as the verdict of a jury, and we should not disturb them if they find support in the evidence; but it seems to us that the evidence does not support the findings of the district court. We may also add that we see no reason for taxing any part of the costs to the appellants.

For the reasons heretofore given both cases are reversed, and, as the law action must go back to the district court, they will both be remanded for further proceedings in conformity with this opinion. REVERSED AND REMANDED.