# IN MATTER of HERBERT E. BADGER, Petitioner.

### In Banc, December 31, 1920.

1. **MARRIED WOMAN: Suit Against Husband.** In view of the powers of courts of equity, and especially in view of our Married Woman's Act (Sec. 8304, R. S. 1909), a wife may, as a *femme sole*, sue her husband in law or equity, as she may others, except that she cannot maintain an action for personal tort against him.

2. **JURISDICTION: Court of Equity: Rights of Person.** Broad intimations in numerous cases that a complainant's person is beyond the scope of the powers of a court of equity are not to be taken literally, for equity jurisdiction for the protection of personal rights does exist.

3. ————: ————: ————: **Infants.** The protection of infants, even from their parents, is one of the exceptions to the general rule that a complainant's person is beyond the scope of the powers of a court of equity, and constitutes one of the established grounds for the exercise of equity jurisdiction in the protection of personal rights.

4. ———: Infants: Ward of Court: Public Charge. It is not necessary for the exercise of equity jurisdiction in the protection of infants that they be a public charge or that the proceeding so declare; they become wards of a court of equity when they are brought before it for any purpose, and any proceeding or application in equity relating directly to them is sufficient. Nor will statutory regulations as to their custody and care affect the court's jurisdiction.

5. ———: ———: Ownership of Property. The ownership of property by infants is not essential to the exercise of equity jurisdiction for the protection of their persons, and a failure to show the existence of property cannot be successfully urged to defeat jurisdiction.

6. ———: ———: Consideration for Exercise: Welfare of Child: Member of Society. The reasons for the exercise by a court of equity of its jurisdiction for the protection of the persons of infants are (a) their welfare, life, health and moral and intellectual being, and (b) in addition their welfare as future members of society.

7. ———: ———: Welfare of Child: Right of Father. Equitable jurisdiction for the protection of an infant will be exercised, even though it may result in taking the child from its own parents or in placing it in the custody of one to the exclusion of the other, when the welfare of the child will be promoted thereby. In such case the paramount right of the father to its custody, while conceded, as a general proposition, need not be considered, where by his moral turpitude he has forfeited his right to such custody: for the father's right is not absolute, but if he is found unfit it must give way to the welfare of the child.

8. ———: Suit by Wife For Maintenance of Minor Children: Right to Divorce: Contempt. A married woman may file a bill in equity against her husband for the maintenance and custody of their minor children, and upon a showing of his moral turpitude a decree in her favor may be enforced by imprisoning him for his refusal to surrender the children into her custody; and her right to a decree for maintenance and for the custody of the children is not impaired by the fact that, although entitled to a decree for separation, she waives her right thereto and prays only that he be required to make provision for herself and the children and that she be awarded their custody.

9. INFANTS: Custody: Procedure: Habeas Corpus: Suit for Maintenance. The wife may maintain a suit against her husband for maintenance and for the custody of their children, or *habeas corpus* for their custody may be maintained; in neither case is the court bound by the mere legal right of parents, but the welfare of the minor children is the matter of paramount consideration, and that, in either proceeding, is a subject of equitable jurisdiction.

## Habeas Corpus.

WRIT QUASHED.

W. O. Jackson and John H. Lucas for petitioner.

WALKER, C. J.—Petitioner was adjudged guilty of contempt by the Circuit Court of Bates County for refusing to obey an order of that court, and was sentenced to imprisonment in the county jail. He seeks release therefrom on the ground that the court was without jurisdiction.

In March, 1919, the wife of the petitioner filed a bill in equity against him in the Circuit Court of Bates County for maintenance and the custody of their three minor children. A decree was rendered in her favor. Upon an appeal to the Kansas City Court of Appeals the judgment of the trial court was affirmed and the custody of the children awarded to the mother. [224 S. W. 41.] Petitioner thereupon applied to the Supreme Court for a writ of certiorari to be directed to the Court of Appeals, on the ground that its opinion was in conflict with certain decisions of the Supreme Court. The application for the writ was denied.

Petitioner then applied to the Supreme Court for a writ of prohibition to prevent the trial court from taking further cognizance of the suit in which it had rendered judgment against him, and especially from proceeding against him for contempt for his failure to surrender the custody of the children to their mother. The application for this writ was denied.

Upon the failure and refusal of the petitioner to comply with the judgment of the trial court he was adjudged guilty of contempt and ordered into the custody of the Sheriff of Bates County to be imprisoned in the county jail until the further order of the court, or until otherwise discharged by due process of law. Petitioner thereupon applied to the Supreme Court for a writ of habeas corpus alleging as sole ground therefor, as in the applications for certiorari and prohibition, a lack of

jurisdiction of the trial court in equity to entertain a proceeding to determine and award the custody of minor children.

It is not necessary to set forth in detail the facts adduced in evidence upon which the trial court based its finding in rendering judgment herein and in thereafter ordering the petitioner's imprisonment for his failure to comply therewith. These facts, if not expressly conceded, are not attempted to be denied and are made a part of the sheriff's return. We also find them correctly set forth with all necessary fullness in the learned opinion of the Court of Appeals by ELLISON, J. Their recital here would consequently only serve to emphasize the moral turpitude of the petitioner and add, if possible, to the radiant lustre of his wife's life as manifested by her fidelity to duty.

Only so far, therefore, as it may be deemed necessary to clearly define the character and render evident the attitude of the petitioner will the facts as found by the trial court be stated.

The petitioner, his wife, and three small children, lived in Colorado. The youngest child became seriously ill and so continued for many months. The mother attempted during all of this time to give the child such attention as its condition required, and at the same time to care for the other children and perform all the duties of a housewife. As a result her health broke down and she suffered from nervous prostration. After months of treatment she was taken by petitioner to her father's home, the children then being cared for by his mother. During the latter part of the wife's illness a nurse was employed to care for the wife. The petitioner became infatuated with this woman, afterwards shown to be without character. Upon the wife's recovery and her repeated importunities that the petitioner provide a home for her and the children, he refused to do so, ineffectually sought to obtain a divorce or to induce the wife to obtain one, and continued his clandestine relations with the woman, who, in the meantime, had gone

to Rich Hill, Missouri. Upon the refusal of the peti-
tioner to establish a home for his wife and children and
his cruelly informing the wife that he did not intend
to live with her, she brought a suit in Colorado for main-
tenance and the custody of the children. Upon being
served with summons in that proceeding he took the
children, then at his mother's, and came with them to
Rich Hill, where he proceeded to establish a home and
to install therein as mistress the woman with whom he
had become infatuated, placing his children in her
charge. This woman's immorality was a matter of
record of which the petitioner had knowledge. This
condition of affairs existed at the time the wife brought
the action in Bates County and continued after the custo-
dy of the children had been awarded to her, when the
petitioner spirited them away in violation of the court's
decree, and hence the adjudication in contempt from
which petitioner seeks release.

The right of the petitioner to the writ herein is
dependent upon the jurisdiction in equity of the trial
court. This jurisdiction is the question primarily to be
determined. Other inquiries determinative of that juris-
diction may properly be considered.

I.  At the common law the identity of the husband
and wife as one person precluded either from suing the
other; but in equity, where the wife's claims
were adverse to her husband's, she might sue
him by next friend and he might sue her. Ear-
ly in the history of our jurisprudence courts
of equity recognized the separate existence of the wife
and secured to her her separate estate and equitable
rights. [Tennison v. Tennison, 46 Mo. 77.] Her rights
as thus limited were generally recognized here and in
other states of the Union before the enactment of the
Married Women's Act. The dominating changes effec-
ted by this character of legislation are too familar to
require extended recital. While the statutes of the
several states on this subject are similar in the main,

*Wife's Right to Sue Husband.*

they are different in minor particulars not necessary to be set forth here. Generally this purpose, as evidenced by their terms, is to render the husband and wife independent of each other as to their property and litigable rights; thus rendering the wife capable of contracting in law as well as in equity, as if she were a *femme sole*. The Missouri statute (now Sec. 8304, R. R. 1909), omitting the proviso, not pertinent, is as follows: "A married woman shall be deemed a *femme sole* so far as to enable her to carry on and transact business on her own account, to contract and be contracted with, to sue and be sued, and to enforce and have enforced against her property such judgments as may be rendered for or against her, and may sue and be sued at law or in equity, with or without her husband being joined as a party."

An illuminating opinion by GANTT, J., in Rice, Stix & Co. v. Sally, 176 Mo. 107, after construing this statute, concludes that "a proper construction of same leads to the complete emancipation of the wife from her matrimonial bonds so far as her property rights are concerned in law as well as in equity, that she may contract with her husband and sue and be sued by him at law." This conclusion was reached in determining that the wife might maintain an action at law against her husband.

In Grimes v. Reynolds, 184 Mo. 679, 694, the right of a wife to litigate concerning her separate estate, to become a creditor or a debtor of her husband, and the authority of either to enforce their rights in equity against the other, was definitely declared. Our latest ruling on this subject, which follows the trend of former decisions, is found in Regal Realty etc. Co. v. Gallagher, 188 S. W. 151, in which it is broadly stated that the statute in clothing the wife with powers of a *femme sole* and authorizing her to transact business and contract and be contracted with, applies as well to her relations with her husband as with others (citing numerous cases).

From all of which it follows that a wife may, as a *femme sole,* sue her husband as she may others in law

as well as in equity, except that she cannot maintain an action for a personal tort against him. [Rogers v. Rogers, 265 Mo. 200].

II.  Before discussing the immediate question of jurisdiction here demanding determination, we may not inappropriately consider the more general

Jurisdiction as to Personal Rights.

inquiry as to the power of a court of equity to exercise jurisdiction in the protection of personal rights or the extent to which the maxim *aequitas agit in personam* is applicable.

It is true that the findings of the trial court not only considered and disposed of the personal status but the property rights as well of the children.  This might be regarded as foreclosing the necessity of a consideration of the general inquiry; but that no phase of the court's equity powers may not be subjected to review, we consider it.  If not expressly stated, the intimation appears in numerous cases that a complainant's person is beyond the scope of the powers of a court of equity.  However, this conclusion must not be taken literally.  "If so," as was forcefully said by a modern commentator (Burdett A. Rich), "it would make the system of equity suitable only to a semi-savage society which has much respect for property but little for human life. Our equity jurisprudence does not deserve so severe a reproach."  While it has done much for the protection of personal rights, it has been reluctant to admit it.  The existence of this power rendered evident by its frequent exercise, cannot be affected by the reluctance of the courts in admitting it.  Instances illustrating the exercise of equity jurisdiction for the protection of personal rights may by the curious be found in an exhaustive note appended to Chappell v. Stewart, 37 L. R. A. 783, and in 8 Sol. Jour. 158, 179, where the cases ruling affirmatively upon the court's power in this respect are carefully collated.  These cases, supplemented by numerous others herein cited,

we will consider in the discussion of the immediate question at issue. They will be found to authorize the conclusion that courts of equity, clothed as they are with this general power, may include in its exercise the determination of the personal rights of infants. If this conclusion be correct, jurisdiction in the instant case may properly be predicated thereon.

But if resort be had to the illogical refuge that the exercise of the court's power as applied to the ·case at bar, is not included within and made a part of its general power, then the propriety of that exercise may be sustained on the ground that the protection of infants, even from their parents, is one of the exceptions to the limitation under discussion and constitutes one of the well established grounds for the exercise of equity jurisdiction in the protection of personal rights. [Shelley v. Westbrooke, Jac. Eng. Ch. R. 266; Warde v. Warde, 2 Phill. Ch. 786; Creuze v. Hunter, 2 Cox, Ch. Cases, 242; Thomas v. Roberts, 3 DeG. & S. 758; State v. Grisby, 38 Ark. 406; Cowls v. Cowls, 3 Gilm. 435; State v. Stigall, 22 N. J. L. 286; Wilcox v. Wilcox, 4 N. Y. 575; Ward v. Roper, 7 Humph. 111; State v. Baird, 21 N. J. Eq. 384; Striplin v. Ware, 36 Ala. 87; In re Flynn, 2 DeG. & S. 457; Eyre v. Countess of Shaftesbury, 2 P. Wms. 103 as annotated 2 L. Cas. Eq., White & Tudor, p. 1446.]

III.  Whether this jurisdiction had its origin in the fiction of the right of the king as *parens patriae,* to which we referred approvingly in State ex rel. Cave v. Tincher, 258 Mo. 1, which right it is contended

Custody of Minors: Jurisdiction.

reverted to the king as the general protector of all the infants in the realm after the abolition of the Court of Wards (3 Bl. Comm. 426; 2 Fonbl. Eq. B2, pt. 1, ch. 2, sec. 1, note a; Eyre v. Countess of Shaftesbury, 2 P. Will. 118; Wellesley v. Wellesley, 2 Bligh (N. S.) 136; Wellesley v. Duke Beaufort, 2 Russ. 1, 20; Cary v. Bertie, 2 Vern. 333; Morgan v. Dillon, 8 Mod. R. 135;

DeManneville v. DeManneville, 10 Ves. 52, 63; Ex parte Phillips, 19 Ves. 118); or that it arose from considering guardianship in the nature of a trust, and trusts being the favored objects of equity, that the jurisdiction had this broad general foundation (Duke of Beaufort v. Berty, 1 P. Will, 705; 3 Story, Eq. Juris. (14 Ed.) sec. 1745 and notes); or that it had its origin in one of the old common-law writs in relation to wards (Coke Litt. 89a, Hargrave's note 70; 2 Fonbl. Eq. B2, pt. 2, ch. 2, sec. 1); or that it was originally an usurpation for which the best possible excuse was that if afforded opportunity for the beneficent exercise of a power peculiarly equitable in its nature which had not otherwise been sufficiently provided for, is immaterial so far as any of these theories may in a determinative way affect the matter at issue. [3 Story, Eq. Juris, sec. 1747 and notes.] We have stated them simply to show the manner in which the question has been mooted; even this array will not suffice to cover the entire field of conjecture, for it is at best nothing more, to which resort has been had to account for the origin of this jurisdiction. This much is certain, it exists and has been exercised by courts of equity for more than two centuries in England and in the different states of this Republic for shorter periods of time but for like reasons and purposes. [See English and American cases cited in 3 Pom. Eq. Juris. (4 Ed.) notes 1 and 2 to sec. 1304, p. 3141; In re Agar-Ellis, 24 Ch. Div. 317; In re Elderton, 25 Ch. Div. 220, 20 R. C. L. sec. 14, p. 599; Neville v. Reed, 134 Ala. 317; Kelsey v. Green, 69 Conn. 291; Lally v. Fitz-Henry, 85 Iowa, 49; Meritt v. Swimley, 82 Va. 433, 3 Am. St. 115.]

It will be seen not only from the lucid text of Pomeroy but from the adjudicated cases, that the inherent power of a court of equity over the persons and estates of infants is very wide. [United States to use of Hine v. Morse, 218 U. S. 493.] While it is technically true that a requisite to jurisdiction is that the infant must be a ward of the court, it is not necessary that it be a public charge or that the purpose of the proceeding be

to so declare it, as was the purpose in the Tincher case, supra; it becomes the ward of the court when it is brought before it for any purpose; and any proceeding or application in equity relating directly to the infant is sufficient. [Gynn v. Gilbard, 1 Drew & S. 356; In re Potter, L. R. 7 Eq. 484; In re Graham, L. R. 10 Eq. 530; In re Hodge's Settlement, 3 Kay & J. 213; Butler v. Freeman, Amb. 302; Rivers v. Durr, 46 Ala. 418; Williamson v. Berry, 8 How. (U. S.) 495, 531, 12 Law Ed. 1170; 20 R. C. L. sec. 15, p. 601 and notes; see also annotations to Faulkner v. Davis, 98 Am. Dec. l. c. 733, 14 R. C. L. 267 sec. 42, n. 10.] Statutory regulations as to the custody and care of infants will not affect the court's jurisdiction. [Anon. 55 Ala. 428; Bryan v. Bryan, 34 Ala. 516; Moore v. Moore, 66 Ga. 336; State v. Thompson, 117 La. 102; People v. Parr, 121 N. Y. 679; 29 Cyc. 1602 and notes.]

The infant's ownership of property is not essential to the existence of jurisdiction. We have shown that this question is eliminated at bar on account of the findings of the trial court. If not eliminated, an allegation in the pleadings and the trial court's findings in regard thereto might be regarded as mainly formal, and a failure to show the existence of property could not be successfully urged for the purpose of defeating the jurisdiction. In England as well as in this country, well considered cases sustain the exercise of this jurisdiction although it affirmatively appeared that the infants had no property. [Johnstone v. Beattie, 10 Clark & Fin. 42; Cowls v. Cowls, 3 Gilm. 435, 44 Am. Dec. 708; Maguire v. Maguire, 7 Dana, 181.]

In this connection a learned Federal judge made the following pertinent statement: "If a court has jurisdiction where the matter in dispute is a mere right of property, why should its jurisdiction not extend to a more important controversy where the custody and control of a child is the matter in dispute?" [Bennett v. Bennett, Deady (U. S. Dist. Court Rep.) 321.]

IV.  Brushing aside, therefore, these purely techni-
cal questions as to wardship and the possession of prop-
erty, what are the impelling reasons for
the exercise of the jurisdiction of courts
of equity in cases as at bar?  The welfare of
the child, its life, health and moral and intellectual be-
ing are, in a proper exercise of the court's power, to
be kept well in view in all controversies concerning its
custody, care and control.  In addition, if the court be
imbued with that spirit of patriotism which should al-
ways prompt judicial action along with a proper con-
sideration of the rights of litigants, the welfare of the
child should be looked to as a future member of society
upon whom in the fullness of time will fall its share of
the burdens and responsibilities of citizenship.  This
may be more homiletic than juridical, but is not the
judiciary more immediately charged with the public wel-
fare than either of the other co-ordinate powers of
government?

*Reasons for Exercise of Jurisdiction.*

In the evolution of equitable jurisdiction we find
that, in a proper case where it appears that the welfare
of the infant will be best promoted by removing it from
the custody of its guardian, this power may be exercised,
although it may result in taking the child from its own
parents or in placing it in the custody of one to the
exclusion of the other.  The paramount right of a father
to such custody, upon which this court has explicitly
ruled  (State ex rel. Crockett v. Ellison, 271 Mo. 416),
need not be considered, and, while it may be conceded,
as a general proposition, it will not suffice to shorten
the arm of equity to prevent its reaching the father to
deprive him of the child's custody and transfer it to the
mother, where by his moral turpitude he has forfeited
the right to such custody.  In thus overruling the fa-
ther's paramount claim and substituting therefor its own
discretion, the court is moved not by a purpose to punish
the father but to protect the children and promote their
welfare.  This accords with right reason and is a proper
exercise of the power of a court of conscience.  The cor-

rectness of this conclusion is rendered more evident when we consider that however paramount and immune from interference may be the parent's right to priority of custody, this right is not an absolute one, and if the parent is found unfit it must give way to the welfare of the child. [State ex rel. v. Ellison, supra; Weir v. Marley, 99 Mo. l. c. 495; In re Ingenbohs, 173 Mo. App. 261; Ex Parte Smith, 200 S. W. 681; Stapleton v. Poynter, 111 Ky. 264, 53 L. R. A. 784 and notes; Re Lally, 85 Ia. 49, 16 L. R. A. 681; State ex rel. Lasserre v. Michel, 105 La. 741, 54 L. R. A. 927; Nugent v. Powell, 4 Wyo. 173, 20 L. R. A. 199; Van Walters v. Board, 132 Ind. 568, 18 L. R. A. 431; Lynch v. Rotan, 39 Ill. 14; Downin v. Lessors, 35 Md. 474; Lee v. Lee, 55 Ala. 590; In re Stockman, 71 Mich. 180; 3 Story, Eq. (14 Ed.) sec. 1752.]

Nor is the power of the court to be impaired because the wife, although entitled to a decree of separation, waived her right thereto and insisted only that the husband be required to make provision for herself and the children and that she be awarded the custody of the latter. Cases which hold that a court's right to the determination of the custody of children is dependent upon a decree of divorce will be found upon an examination to be limited to those in which the right to the custody was sought as an incident to the suit for the decree, and not, as in the instant case, to the purely equitable ground of the unfitness of the father to continue in the exercise of that right. In the majority of the cases cited in this opinion in support of the court's jurisdiction the gravamen of the action was not to secure a decree of divorce but to determine the custody of the children. In Wellesley v. Wellesley, supra, which may be considered as one of the leading cases on the subject, the purpose of the suit was to determine the custody of minors. In numerous other cases where a decree of separation was sought and denied, the courts have nevertheless awarded the custody of minor children to one parent or the other as the facts warranted. [Horton v. Horton, 75 Ark. 22; Robinson v. Robinson,

146 App. Div. 533; Davis v. Davis, 75 N. Y. 221; Light v. Light, 124 App. Div. 567; Cornelius v. Cornelius, 31 Ala. 479; Anon. 55 Ala. 428; Luck v. Luck, 92 Cal. 653; Hoskins v. Hoskins, 28 Ky. L. Rep. 435; Knoll v. Knoll, 114 La. 703; Power v. Power, 65 N. J. Eq. 93; Lusk v. Lusk, 28 Mo. 91; Defee v. Defee, 51 S. W. (Tex.) 274; Baird v. Baird, 21 N. J. Eq. 384; Matter of Tierney, 128 App. Div. 835; 19 C. J. 789, 794 and notes.]

V. The jurisdiction of the trial court having been established, only passing consideration need be given to the formal character of the proceed-

**Habeas Corpus: Procedure.** ing. It was, as stated, a suit in equity for maintenance and the custody of the children. Many precedents sustain the propriety of this form of proceeding. In others, to effect a like purpose as to custody, *habeas corpus* has not improperly been resorted to. In such cases it is not the limited jurisdiction of this writ that is invoked, because the proceeding is not directed towards freeing children from imprisonment, but to exercise the broader power of courts of general equity jurisdiction over the custody of the persons of infants. An admirable modern compendium of legal principles makes the following deductions from numerous cases:

"The ascertainment and enforcement of the custody of minor children by the use of the writ of *habeas corpus* is of an equitable nature, and in such cases the question of personal freedom is not involved, for an infant, from humane and obvious reasons, is presumed to be in the custody of someone until it has attained its majority; and the court, when asked to restore an infant, is not bound by any mere legal right of parent or guardian, but is to give it due weight as a claim founded on human nature, and generally equitable and just. Therefore these cases are not decided upon the legal right of the petitioner to be relieved from unlawful imprisonment or detention, as in the case of an adult, but upon the court's view of the best interests of those

whose welfare requires that they be in custody of one person or another; and hence a court is in no case bound to deliver a child into the custody of any claimant or of any person, but should, in the exercise of a sound judicial discretion after a careful consideration of the facts, leave it in such custody as the welfare of the child at the time appears to require." [12·R. C. L. 1215.]

Mr. Justice BENSON, of the Supreme Court of Oregon, in discussing this question says, in effect: The nature of the investigation, the peculiar latitude involved in the inquiry, the nature of the relief sought and granted, present an irresistible demand for the intervention of a court of equity. In the absence of our statute it must be conceded that a court of equity would have jurisdiction . . . It has been held, however, that no Legislature can abrogate or impair the efficiency of the writ, and its use as it was available at common law is still available in courts of equity; and the fact that the Legislature has seen fit only to provide a procedure for its exercise in cases for which it was originally designed and is silent as to the procedure in cases calling for the exercise of chancery powers, it follows that proceedings in equity are still available. [Turner v. Hendryx, 86 Ore. 590.]

Chancellor STEVENSON, of the Court of Errors and Appeals of New Jersey, in speaking for that court in a case involving the same issue as that at bar, said:

"It is not the limited jurisdiction upon *habeas corpus* which is exercised by the justices of the supreme court as well as the chancellor which is invoked in this case. The petition is not directed towards freeing this little child from imprisonment. The pleadings set forth in detail the claims of the contending parties to the custody of the infant, and the proofs have been directed toward sustaining and defeating respectively each of these hostile claims. The broad jurisdiction invoked is the 'general equity jurisdiction over the custody of the person of infants which the chancellor exercises as

*parens patriae'* (Citing cases)." .[In re Flynn, 87 N. J. Eq. 1. c. 414.]

These rulings authorize the conclusion that if another form of action than that of a bill in equity has been resorted to—for example, *habeas corpus*—the chancery powers of the court must be invoked to determine the issue. [Campbell v. Campbell, 76 Mo. App. 396; Green v. Campbell, 35 W. Va. 698, 29 Am. St. 843; Armstrong v. Stone, 9 Grat. 102; Brooke v. Logan, 112 Ind. 183, 2 Am. St. 177.] Having been determined, the court will so exercise its prerogative, under all the facts, as will best promote the welfare of the child, regardless of its wishes or inclinations. [Moore v. Christian, 56 Miss. 408, 31 Am. Rep. 375; In Re Swall, 36 Nev. 171; Jones v. Harmon, 27 Fla. 238; 21 Cyc. 330, note 61.]

From all of which it appears that the petitioner is held in custody upon the judgment of a court of competent jurisdiction and that the writ of *habeas corpus* was improvidently issued and should be quashed and the petitioner remanded to the custody of the sheriff of Bates County. It is so ordered. All concur, except *Graves, J.,* who dissents; *Woodson, J.,* concurs in the result.