In the Matter of Terry Rae SHEPLER, an Infant, and Kevin Lee Shepler, an Infant.

Edward R. SHEPLER, Petitioner,

v.

Otis Terrill SAYRES and Lorena Sayres, Respondents.

No. 49896.

Supreme Court of Missouri,

En Banc.

Nov. 11, 1963.

J. Andy Zenge, Jr., Canton, for petitioner.

Brown & Normile, Edina, for respondents.

LEEDY, Judge.

This habeas corpus proceeding was instituted in the original jurisdiction of the St. Louis Court of Appeals. After opinion in that court (361 S.W.2d 354), and on respondents' application to this (the Supreme) court, the proceeding was ordered transferred here pursuant to Art. V, § 10, Const. of Mo., V.A.M.S., and Rule 84.05, V.A.M.R. It is the fourth in a series of legal skirmishes involving competing claims, as between the natural father and the maternal grandparents, to the custody of two children, Terry Rae Shepler, now 12 years of age, and her brother, Kevin Lee Shepler, now 8 years of age. The petitioner, Edward R. Shepler, is the natural father of said children, and the respondents, Otis Terrill Sayres and Lorena Sayres, are the maternal grandparents with whom the children have been living since the accidental death of their mother, Melba E. Shepler (by drowning) on July 24, 1960.

■ On October 7, 1955, in the Circuit Court of Scotland County, the mother, Melba, was granted a divorce from Edward, and by the decree was awarded custody of the two children and $100 a month for their support. The children continued in her custody until the date of her death, soon after which two of the actions above referred to were instituted. Both were abortive. See Shepler v. Shepler, Mo.App., 348 S.W.2d 607, decided July 18, 1961.[1]

1. This decision discloses that on July 28, 1960, the maternal grandparents filed in the Scotland Circuit Court their "Petition for Custody" of the two children, said court being the one wherein the divorce had been obtained and custody of the children awarded to their mother. On the same day a hearing thereon was held in the juvenile division of that court, and temporary custody of the children was awarded to said maternal grandparents, and the cause was continued until September 6, 1960, for hearing on the question of permanent custody. On the day so appointed for hearing on the latter question, the father filed in said circuit court his motion to modify the original decree of divorce with respect to custody so as to award such custody to him. By agreement, the latter motion and the respondents' "Petition for Custody" were consolidated for trial before Hon. Wm. E. Stewart, Judge of the Second Judicial Circuit, who was sitting as a Special Judge of said Scotland Circuit Court, and the resulting judgment was that Edward's motion to modify the decree of divorce as to custody be denied, and that Mr. and Mrs. Sayres be awarded permanent custody of the children. Edward appealed to the St. Louis Court of Appeals where it was held that the trial court was without jurisdiction to hear and determine either the grandparents' petition for cus-

Following on the heels of this decision, (on August 12, 1961) Edward brought habeas corpus in the Circuit Court of Knox County (in which county Mr. and Mrs. Sayres reside) to obtain custody of the children. On hearing and trial held August 22, 1961, before the Honorable Wm. E. Stewart, the regular judge of said court, a judgment or decree was entered in that proceeding by which it was ordered and adjudged that Edward be denied the custody of said children, and that such custody be and remain with the grandparents. Upon the overruling of his motion for a new trial, Edward sought to appeal to the St. Louis Court of Appeals, and to that end he not only filed a "notice of appeal," but also had prepared and approved a full transcript on appeal, consisting of 147 pages, the original of which was filed January 29, 1962, in the Court of Appeals, where the cause was numbered 31,130. While not shown by the instant record, it is apparent that appeal was subsequently dismissed, either by the appellant or by the appellate court inasmuch as no appeal lies from such a judgment. (Edwards v. Engledorf, Mo.App., 176 S.W. 2d 32; State ex rel. Kassen v. Carver, Mo. App., 355 S.W.2d 324.)

Such was the state of affairs when on August 15, 1962, Edward filed in the St. Louis Court of Appeals his petition in the present proceeding. In due time that court's writ of habeas corpus issued, directed to respondents, who filed their return, and to which petitioner filed "Answer." The petition and return are summarized in the opinion of the Court of Appeals, which summary we adopt by reference; but in addition to those allegations so summarized, the return also alleges: " * * * that the petitioner is now employed in Phoenix, Arizona, and is engaged in an occupation which in the past has necessitated his making frequent and regular changes of residence and domicile; since the divorce between Edward R. Shepler and Melba E.

Shepler, the petitioner has only visited these infant children infrequently and at no time have they ever stayed with their father overnight; that due to the neglect and abandonment of these children when Kevin Lee Shepler was one week old and Terry Rae Shepler was three years old, and his separation from them for approximately eight years, he is no more than a stranger to them; * * * that up to the date of the death of Melba E. Shepler these infant children stayed with· Otis Terrill Sayres and Lorena Sayres for a week or more at a time and since the death of their mother, they have lived with the said Otis Terrill Sayres and Lorena Sayres continuously for over two years and have been provided by them with all the necessities of life; that they own their own home in Edina, Missouri, which is free of debt; that they are of good character and are financially able to provide and care for the infant children aforesaid; that in the past they have contributed materially to the support of said infant children and have on occasions provided a home for the children and their mother before her death; they are the closest relatives of the infants aforesaid with the exception of the petitioner; that they are well able and anxious to have the custody and care of said infants; * * * that both Terry Rae Shepler and Kevin Lee Shepler attended school in Edina during the past school year and made above average grades and are well assimilated into their classes; that both children have made numerous childhood friends in Edina, Missouri, and a move to a strange town and environment with strangers would entail major adjustments by these children into their new environment; that the environment to which the petitioner proposes to take these children is entirely different than the environment in which they are living and would also entail a major adjustment by these children; that for over two years these chidlren have lived in the home of Otis Terrill Sayres and Lorena Sayres;

tody or Edward's motion to modify. The trial court's judgment was accordingly reversed, and the cause was remanded

with directions to the trial court to dismiss both the "Petition for Custody," and the motion to modify.

that they are presently in the best mental and physical health and well-being; that to take them from the home which has been proven by the test of time to be a successful one for these children and to allow the petitioner to take them to his home where there is a serious question as to whether or not they would fare equally well would not be to the best interests of these children but would be an experiment with the welfare of the children; that they and these children have a parent-child affection for each other and to award the custody of these children to the petitioner would cause great mental pain and distress to the children and would not be to their best interest; that because of the abandonment of these children by the petitioner they have no feeling for him and do not wish to live with him; * * *." (The issues tendered by these pleadings are basically the same as those involved in the prior Knox County habeas corpus proceeding just mentioned.) Singularly, it was stipulated in the Court of Appeals that the transcript on appeal in said prior Knox County proceeding (being that numbered 31,130 of the causes of said Court of Appeals) "be used as the transcript of the record in this cause." The cause was accordingly submitted thereon, together with later filed depositions of two of Terry Rae's public school teachers, her Sunday School teacher, and her grandmother, Mrs. Sayres, plus copies of petitioner's income tax returns for the years 1959, 1960 and 1961, the great bulk of the evidence, however, being that contained in the stipulated transcript in the prior case. (Curiously, the stipulated transcript shows that such prior Knox County habeas corpus case was, by agreement, tried in part on a transcript of the present petitioner's own

testimony as given by him at the trial of the still earlier Scotland County consolidated causes (referred to in footnote 1) before Judge Stewart in September, 1960; this notwithstanding the fact petitioner was personally present, and testified at said August 22, 1961, trial. Memorandum briefs were submitted, and in due time the court's opinion was delivered by which Edward was "granted custody of his children forthwith."

■ Without analyzing or discussing the numerous (and, unfortunately, sometimes seemingly divergent) pronouncements of the several appellate courts of this state, including this court, in reference to the principles of law applicable to the adjudication of child custody questions,[2] it may be said that the prime consideration of the courts, and the ultimately determinative factor in all such cases, is that of the welfare and best interest of the children involved. This principle was reiterated and applied as lately as the case of In re Duncan, Mo., 365 S.W.2d 567, where the following from Ex parte De Castro, 238 Mo.App. 1011, 190 S.W.2d 949, 951, was quoted approvingly: "There is, however, a still further issue which inheres in the case by reason of its subject matter. This is the issue of the welfare of the child, which is an issue always to be kept in view in all legal proceedings involving the custody and control of a minor child as to which the state stands in the relation of parens patriae. In other words, whenever a minor child is brought within the jurisdiction of a court for an adjudication with respect to the question of its custody, the child becomes the ward of the court; *and in determining the question of its ultimate disposition, the*

2. See (among others): In re Duncan, Mo., 365 S.W.2d 567; Testerman v. Frederich, Mo.App., 323 S.W.2d 522; Le Claire v. Le Claire, Mo.App., 352 S.W.2d 379; In re J_____, Mo.App., 357 S.W.2d 197; Bruns v. Uebel, Mo., 318 S.W.2d 324; Morris v. McGregor, Mo.App., 269 S.W.2d 171; Ex parte Archer, Mo.App., 253 S.W. 1095; Irvin v. Irvin, Mo.App., 357 S.W.2d 254; Birrittieri v. Swanston,

Mo.App., 311 S.W.2d 364; Stricklin v. Richters, Mo.App., 256 S.W.2d 53; In re Wakefield, 365 Mo. 415, 283 S.W.2d 467; S_____ v. G_____, Mo.App., 298 S.W.2d 67; Clark v. Clark, Mo.App., 300 S.W.2d 851; Orey v. Moller, 142 Mo. App. 579, 121 S.W. 1102; In re Cole, Mo.App., 274 S.W.2d 601; Cox v. Carapella, Mo.App., 246 S.W.2d 513.

*child's well-being is of paramount consideration, and the rights and claims of the contending parties, even in the case of the parents themselves, must be subordinated to what the court may conclude will be for the best interest of the child.* Ex parte Badger, 286 Mo. 139, 226 S.W. 936, 14 A.L.R. 286. * * * In such an instance the nature of the inquiry makes the proceeding one of an equitable nature; *and the question of either party's strictly legal right will be measured in terms of the welfare of the child.* Ex parte Badger, supra; 25 Am.Jur., Habeas Corpus secs. 78–80; 39 C.J.S. Habeas Corpus § 41." (Emphasis the present writer's.) See, also, those cases cited in footnote 2 to the same effect.

In Duncan, supra, the father had obtained the divorce and the decree (rendered by default on constructive service), with no actual hearing on his fitness or the welfare of the couple's two children, awarded their custody to the father. Thereafter he brought habeas corpus to obtain their custody from the maternal grandparents with whom said children had been left by both parents prior to the divorce. The maternal grandparents resisted, and their allegations bear striking similarity to certain portions of the return in this case charging unfitness of petitioner and the reasons for which it would be to the best interest and welfare of the children to remain with their grandparents. The trial court sustained Duncan's motion for judgment on the pleadings on the theory that the respondents were concluded by the decree's award of custody to the father, and that such decree was not subject to collateral attack as attempted by the grandparents. The St. Louis Court of Appeals reluctantly affirmed, but transferred the cause to this court for reexamination of the existing law (Duncan v. Pitts, Mo.App., 360 S.W.2d 361). This court took the view that "where the whole future of the lives of children is at stake, *the matter is too important to be decided*

solely on a legalistic presumption of fitness based on a default decree on a perfunctory hearing," (emphasis supplied) and it was accordingly held that under the facts there in judgment the Court of Appeals could hear evidence on the issues of the father's fitness and the children's best interest and welfare, or in its discretion certify the issues to the juvenile court to make orders as to custody, and the cause was remanded for that purpose. (By analogy, that principle, as italicized above, is applicable here with respect to the view entertained by the Court of Appeals, referred to in the paragraph next below, that presumptively it is in the best interest of the children and their welfare to be with their parent.)

■ The award of custody to the father was adjudged by the Court of Appeals on the theory that the grandparents had "failed to bear their burden of proving the petitioner unfit," and by giving what we deem to be undue (if not to say, controlling) weight and emphasis to the parental relationship sustained by petitioner toward the children, including the accompanying or concomitant presumption "that the best welfare of the child is to be with its parents." The circuit judge who heard both the prior Knox County habeas corpus case and the two proceedings in the Scotland Circuit Court involving the claims of the instant parties to the custody of these children (as noted in footnote 1 appended hereto), and who in each instance saw the witnesses (and was thereby better enabled to judge of their credibility), reached a conclusion directly contrary to that of the Court of Appeals, and this notwithstanding that in the present proceeding the evidence was substantially and for all practical purposes the same as that before the circuit judge. In this connection respondents make the point that even though § 510.310, RSMo 1959 and V.A.M.S. (which section, incidentally, has been supplanted by Rule 73.01, V.A.M.R., embodying the same provisions, but extending its scope so as to include advisory jury

cases) is admittedly not applicable,[3] the Court of Appeals should nevertheless have been guided by that precept of said section declaring that upon *appellate review* of a case tried upon facts without a jury, the "judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." It is apparent that the decision of the Court of Appeals does not turn upon its determination of the facts upon weighing the evidence or the credibility of the witnesses, but instead rests upon its conclusion with respect to matters of law.

As hereinabove indicated, we disagree as to the applicability of the principles of law upon which the decision just mentioned is based, and in consequence we are remitted to an inquiry as to facts. Because of his superior opportunity to judge of the credibility of the witnesses, we would be disposed to defer to the findings of the circuit judge on the facts, and would do so except that at the oral argument on the present submission it was agreed that the record be supplemented by certain factual data in relation to school attendance by the children during the school year 1962–1963 (substantially all of which elapsed subsequent to the date of the decision by the Court of Appeals) showing that during the first semester the school attendance of the children was normal, but that during the second semester each child had an inordinate number of unexplained absences. During said second semester, Kevin Lee was absent 58 days, and present only 27 days; Terry Rae was absent 49 days, and present 36. This showing alone raises a serious question as to whether it is in the best interest and welfare of the children to be in an environment (however good it might otherwise be) where discipline and lapses of this kind are tol-

erated or permitted to occur. The only explanation attempted has been by way of a stipulation (filed subsequent to the date of submission of the cause in this court) and its accompanying "Exhibit A" (an osteopathic physician's certificate) together with photographic copies (lodged here recently) of the children's grade cards. Said stipulation (omitting caption and signatures) and the doctor's certificate are, respectively, as follows:

"The following evidence is presented pursuant to a stipulation entered into when this matter was argued before the Court on May 7, 1963, by leave of Court granted at that time. Counsel for the petitioner and respondent interviewed Mrs. Dundee Gates, Edina, Missouri, who teaches the sixth grade at the Edina Public School, and Miss Florence Costello, Edina, Missouri, who teaches the second grade at the Edina Public School. Counsel for respondent and petitioner stipulate and agree that if the depositions of Mrs. Gates and Miss Costello had been taken, they would have testified to the following facts:

"Mrs. Costello would testify as follows: That she is the second grade teacher at the Edina Public School, that Kevin Shepler is one of her pupils. That during the first semester he missed three and one-half days of school and was present 86½ days. That he is a superior student and had an S average for the first semester. That during the first 85 days of the second semester, he has been present 27 days and absent 58 days. That beginning about the first of February he missed four weeks of school and since that time has been attending school only sporadically.

---

3. That is, not within the coverage of the statute or rule because the instant proceeding, although submitted on the record of the Knox County habeas corpus case, is not, in form, an appeal from, nor does it constitute an appellate review (in the conventional sense) of, the judgment ren-

dered in said Knox County case, even though the relief presently sought, if granted, would supersede and overturn the latter judgment, and this, ironically, for all intents and purposes, on the same **record.**

That during the week beginning May 6, 1963 he attended one-half day and that during the week prior to that he attended three days. That in February, 1963, Mrs. Lorena Sayres contacted her concerning make-up work for Kevin Shepler, but has not contacted her since. That Kevin Shepler has made only a partial attempt to make up the work he has missed. That he is a quiet child and is well behaved and is not a discipline problem. Kevin Shepler gets along well with the other children. That at this time she is concerned over whether or not to pass Kevin Shepler to the third grade. That the school year ends on May 17, 1963. That the information she received is that Kevin Shepler was sick the first part of February but that this would not account for the continued absences up to the present time.

"Mrs. Dundee Gates would testify as follows: That she is the sixth grade teacher in the Edina Public School. That Terry Rae Shepler is a student in her class. That in the first semester she missed four and one-half days out of 90 and was thus present 85½ days. That she was either on the Honor Roll or extremely close to being on the Honor Roll the first semester. That during the first 85 days of the second semester she has been absent 49 days and present 36 days. That the absences started about three weeks after Christmas and that her attendance records indicate the following days present starting approximately three weeks after Christmas:

| Week Beginning | Days Present | |
|---|---|---|
| Jan. 21 | ½ | days |
| Jan. 28 | 1 | day |
| Feb. 4 | 1 | day |
| Feb. 11 | 3 | days |
| Feb. 18 | 0 | days |
| Feb. 25 | 2½ | days |
| Mar. 4 | 0 | days |
| Mar. 11 | 0 | days |

| Week Beginning | Days Present | |
|---|---|---|
| Mar. 18 | 0 | days |
| Mar. 25 | 2 | days |
| Apr. 1 | 4 | days |
| Apr. 8 | 3 | (out of 4 days) |
| Apr. 15 | 1½ | days |
| Apr. 22 | 1 | day |
| Apr. 29 | 5 | days |
| May 6 | 5 | days |

"That she has made up all of her English work books and Arithmetic workbooks but that this is about the extent of the makeup work she has completed. However, the other pupils have attempted to help her on work she has missed. That Mrs. Sayres saw her on two occasions, the first being on the street and once at school. Mrs. Sayres said she was worried about Terry and asked for makeup work to be taken home. That the first contact was approximately the beginning of the period mentioned above. That Terry Rae Shepler is popular with the children in her class and is not a discipline problem. That she talked with Terry Rae Shepler about the absences and that the student would give as her excuse "I didn't feel good when I got up this morning" or words to that effect. That she is now concerned over whether or not to pass Terry Shepler on to the seventh grade.

"It is further stipulated that photocopies of the grade cards for Kevin Shepler and Terry Shepler may be submitted to the Court and considered as evidence.

"It is further stipulated that Mrs. Lorena Sayres, one of the respondents, was born on August 16, 1901 and is 61 years of age at this time. That attached to this stipulation and marked Exhibit A is a doctor's certificate from Dr. C. W. Gibson, D. O., Edina, Missouri, concerning his care of Kevin and Terry Shepler. It is stipulated that he

is the only doctor that has cared for the children during this period of time."

*"Exhibit A*

"GIBSON HOSPITAL AND CLINIC

"C. W. Gibson, D. O.
"Edina, Missouri
"May 16, 1963

"To Whom It May Concern:

"This is to certify that I treated Kevin Lee Shepler on February 12, 1963 for a viral influenza. I gave him antibiotics and prescribed further treatment with same. On February 13, 1963 I saw Terry Rae Shepler, who showed listlessness and a run down condition for which I prescribed a vitamin tonic.

"Yours truly,
"/s/ C. W. Gibson, D.O.
"C. W. Gibson, D.O."

The subsequently submitted grade cards state that "on the basis of work made up during the summer," each child had been promoted to the next grade for the 1963–1964 school year.

Moreover, the only oral testimony introduced on the part of petitioner was that of himself and his present (third) wife. A reading of petitioner's own testimony leaves much to be desired, and it is not surprising that the circuit judge would not have been favorably impressed by it. The substance of some of it (including that bearing on the timing of his subsequent marriages, the indefiniteness of his several employments, and his admitted persistent noncompliance with the divorce decree directing reasonable payments for the support of the children) appears in the opinion of the Court of Appeals, but the intangibles do not, nor can they be readily depicted. In the interest of brevity, that set forth in the opinion under scrutiny should be read in connection with the present opinion. On the other hand, there are disquieting intimations in the cross-examination of some of respondents'

witnesses to the effect that Mr. Sayres drinks intoxicating liquor to excess. Even so, he was not called as a witness. Perhaps this is merely illustrative of those instances where a record is made in the light of a trial judge's known familiarity with local conditions, and there is carelessness in preserving the record to be reviewed in other surroundings. In any event, on appraisal of the record anew here, and taking into account the history of the prior litigation, and the variant results in the different courts in the instant case, and the other considerations to which reference has been made, we have concluded that an adjudication on the merits of the custody issue cannot be sanctioned in the absence of a more searching and exhaustive exploration of the facts on which that issue must turn. The submission is therefore set aside, and the cause remanded to the St. Louis Court of Appeals so that such evidence may be taken, and, in the light thereof, a new judgment entered.

All concur, except HOLMAN, J., not sitting.