In the Matter of Charles F. MAUPIN, III,
a Minor: Charles F. Maupin,
Petitioner,

v.

Mrs. Eileen NEELS, Respondent.

No. 33477.

St. Louis Court of Appeals,
Missouri.

Jan. 20, 1970.

Motion for Rehearing or to Transfer to the
Supreme Court Denied March 4, 1970.

Motion to Transfer Denied April 13, 1970.

Gershenson & Gershenson, St. Louis, for petitioner.

Thomas, Busse, Weiss, Cullen & Godfrey, Donald H. Clooney, St. Louis, for respondent.

WOLFE, Presiding Judge.

The Petitioner was granted a Writ of Habeas Corpus for the production of his minor son before the Court. He sought to obtain custody of the son who was at the time in the custody of Mrs. Eileen Neels, the mother of the petitioning father and consequently the paternal grandmother of the child in question. The Respondent filed a return to the writ alleging that the father of the child was not fit to have the child's custody. The matter was certified to the Juvenile Court of St. Louis County under § 211.051, RSMo., V.A.M.S. The Honorable Noah Weinstein, Judge of the Juvenile Court, conducted a hearing of the matter and filed with this Court a transcript of the testimony together with his findings of fact and conclusions of law.

The findings of fact and conclusions of law are as follows:

"Charles F. Maupin III, hereinafter sometimes referred to as the 'child' or 'Chuckie,' was born to Margaret Teanette Maupin and Charles F. Maupin II on October 24, 1959. The child's parents were divorced on October 5, 1961, in Cause No. 39297E in the Circuit Court of the City of St. Louis and custody of the 'child' was granted to the mother. The mother of the child, Margaret Teanette Maupin, died on February 1, 1969. The physical custody of the child was placed with the child's paternal grandmother, Eileen Neels, when he was about a year-and-a-half old and has remained with Mrs. Neels since then up to the present time.

"Eileen Neels, age 54, was married to Charles F. Maupin I and they were divorced 'thirty-four years ago'. Charles F. Maupin II was born of this marriage on June 19, 1933. Charles F. Maupin II, sometimes hereinafter referred to as 'father,' was five years old when he last saw his mother with the exception of meeting in 1961. Other than the 1961 meeting, the father's mother (Mrs. Neels) phoned him once in 1956, or 1957, at the time of his marriage to the child's mother. The father's mother married Thomas Neels on December 6, 1942.

"Charles F. Maupin II, the father of the child, was born June 19, 1933 to Charles F. Maupin and his wife, now Eileen Neels. The father married Margaret (mother of the child). on November 10, 1956, and one child, Charles F. Maupin III, was born of the marriage. They separated on or about July 14, 1961, and were divorced on October 5, 1961, and custody of the child was awarded to the mother. Thereafter, Charles F. Maupin II married Lelia Maupin (in 1961). Lelia's age is forty-one. Lelia has two children by a prior marriage, one of whom, Tommy, age nine, lives with Lelia and Charles F. Maupin II.

"The father has been employed as a truck driver for Lueking Transfer for approximately seven years. His pay is Three Hundred Dollars ($300.00) per week with his take-home pay Two Hundred Twenty Dollars ($220.00) to Two Hundred Fifty Dollars ($250.00) per week. Prior thereto the father was employed by H. A. Dailey Company in 1958 and 1959.

"Earl Trumbull married Margaret Maupin, the mother of Chuckie, on November 6, 1963, which marriage terminated at the death of Margaret on February 1, 1969.

"Thomas V. Neels married Eileen Maupin (Neels) on December 26, 1942. He is fifty-eight years of age. He retired in 1961 from his job with Colgate-Palmolive Peet and is now employed by Muscular Dystrophy. His income is Ten Thousand Dollars ($10,000.00) per year plus expenses. He and Mrs. Neels reside at 7211 Deckside. Charles F. Maupin III has lived with Mr. and Mrs. Neels since on or about August or September, 1961.

"Susan Perry, Deputy Juvenile Officer of the Juvenile Court of St. Louis County, made a home study and filed a report with the Court. By agreement with counsel, the Court did not take this report into consideration in determining the issues and at the hearing the report was not received in evidence. Miss Perry testified in answer to a hypothetical question that she would recommend that the child remain with the grandparents at this time. The Court, however, does not consider this testimony to be material and the conclusion herein reached does not involve the Juvenile Officer's testimony or her report.

"We have a situation in which a child has lived continuously for the last eight of his nine-and-a-half years of life with his paternal grandmother and paternal step-grandfather, Mr. and Mrs. Neels. The physical custody of the child was placed with the Neels by the child's mother prior to the divorce of the child's parents on October 5, 1961, and although the Divorce Decree awarded legal custody of the child to the mother, the physical custody of the child in the Neels continued unchanged up

to the present time. The child has never spent a single night away from the Neels.

"The father of the child has maintained all child support payments. Likewise, the father has exercised his right of temporary custody either on his own or, as later required by Divorce Decree, through his father and two aunts with substantial regularity. Although the records produced by Mrs. Neels indicate that some temporary custody days were missed by the father or his representative, they were not in my opinion substantial or material to the issues. It is not contradicted that the child is being well cared for by the Neels although the father attempted to make some issue about the child's teeth being bad which is not considered material under the circumstances in evidence. A substantial dispute in the evidence exists concerning the alleged drinking habits of the father. This involves particularly a hospitalization of the father at Alexian Brothers Hospital in 1961, as well as a tour of saloons made by the father and his mother (Mrs. Neels), in 1961 which immediately preceded the Alexian Brothers hospitalization. Many witnesses were produced to show the good character and nondrinking habits of the father. In a similar way there is a dispute in the evidence as to how the father treats Chuckie during the times the father has temporary custody and the same dispute exists as to the relationship between Chuckie and Tommy, the latter being the son of Chuckie's stepmother.

"Dr. Harry G. Moore, a psychiatrist, examined the child on June 30, 1969, at the grandmother's request. The total time of the child's examination was twenty minutes and an equal time with the grandmother. Dr. Moore reported 'No obvious signs of emotional disturbance' other than the fact that the boy was quite anxious about what was going to happen to him and spoke of his concern that the might have to live with his father but did not bring out any specific concern. In the doctor's opinion, this was a relatively normal kind of anxiety. The doctor concluded by saying that he was not in a position to make an evaluation.

"Of concern, and deserving of greater consideration in determining the issues in this matter, is the child's school history. The child attended public school kindergarten the first year in 1965, then left the public school for a parochial school, and then returned to the public school in 1967 and has been there since. The child was 'retained' at the end of the second grade and has just finished the second grade for the second time. The child's intelligence quotient is 83 to 85 and is 'somewhat below normal.' The retention of Chuckie in the second grade was considered 'successful' and the child has no behavior problems, gets along well with his peers, and has improved his grades.

"It should be noted that Dr. Leightner treated the stepmother, Lelia Maupin, during her hospitalization from May 30, 1969 to June 14, 1969, for her arteriosclerosis, heart disease and angina pectoris but the Court does not find that this has any substantial bearing on the resolution of the issues in this case.

"As a final witness, the Neels produced Chuckie. The Court cannot, under all the circumstances in this case, give any weight to the testimony of the child and the child's testimony is accordingly excluded from consideration.

"The determinative factor in this case which involves custody is the child's welfare and best interest. The legal right of the father is subordinate to the paramount consideration of the child's welfare. In re Shepler, 372 S.W.2d 87 (Mo., En banc, 1963). This being so, the Court has presented to it as an issue whether or not a nine-and-a-half year old child, who has been living the last eight years of his life in a home which gives him proper care and a child who may be slightly below normal intelligence, had some difficulty in school but is now doing well, should be uprooted from his present environment and transferred to the home of his legal father only

because of one change in condition which is the death of the child's mother on February 1, 1969. It must be borne in mind the child's physical custody, both prior to his parents' divorce and subsequent thereto, remained continuously with his paternal grandmother for most of his life under satisfactory conditions. Thus, the only intervening factor, the death of the child's mother, would have to be given overriding weight and the child's welfare subordinated thereto if the child's custody were changed at this time.

"It is the Court's opinion and conclusion that under the law and the evidence it would be extremely harmful to the child's welfare to uproot him from his present living situation and transplant him into what would appear to him to be both a different and strange living environment even though this be with his legal father and stepmother. Accordingly, the child's welfare and best interest requires that he remain in the custody of his paternal grandmother Eileen Neels and paternal stepgrandfather Thomas V. Neels.

"At the same time the Court feels it should give due recognition to the legal rights of the father and for this reason the father's right of temporary custody on alternate Saturdays and Sundays from 1:00 p. m. to 7:00 p. m. should continue under the same conditions as directed by the Divorce Court, that is, that the child be delivered to his paternal grandfather, or his paternal aunt, or their husbands, that is Charles F. Maupin I, Mr. and Mrs. John Seifert, or Mr. and Mrs. Jack Brown, and returned by either of said parties.

"As the child advances in age and hopefully progresses to a point where his present problems no longer exist, he should become better acquainted with his father and more liberal provisions should be made for the father's right of temporary custody, at least at the point where the child has matured and is in a better position than he is today to make a determination on whether or not he wants to live with his father or continue to live with his paternal grandmother and paternal stepgrandfather."

Exceptions to the findings of fact and conclusions of law above set forth were filed by the petitioning father, and this Court has considered the exceptions and overrules them and accepts the foregoing findings of fact and conclusions of law as the opinion of this Court. The Writ of Habeas Corpus is quashed.

BRADY and DOWD, JJ., concur.