**v.**

**K. D. M., W. and C. W., Defendants-Respondents.**

**In re T. W. and L. W., Minors.**

**E. W., Petitioner,**

**v.**

**K. D. M., W. and C. W., Respondents.**

**Nos. 34181, 34484.**

Missouri Court of Appeals, St. Louis District.

March 28, 1972.

Stephen E. Gottlieb, Legal Aid Society, St. Louis, for petitioner-appellant.

Vincent E. Hartigan, Jr., St. Louis, for respondents.

WEIER, Judge.

Case No. 34,181 was an appeal from a judgment of the St. Louis County Circuit Court, remanding two children, aged two and three years, to their putative father. This judgment followed the filing of a petition for writ of habeas corpus by the unwed mother, a return alleging she was an unfit mother, and an evidentiary hearing on the issue of parental fitness. We thereupon determined that we did not have jurisdiction to entertain the appeal since appeal does not lie in habeas corpus; and by opinion we dismissed the appeal. Before our mandate went down in Case No. 34,181, the same petitioner in that case had filed a petition in this Court, in Case No. 34,484, for writ of habeas corpus against the same respondents and, upon the issuance of the writ, respondents filed their return. Both

* Commissioner when case submitted.

petition and return in the habeas corpus proceeding in this court are almost identical to those filed in the case appealed from the circuit court. In response to petitioner's assertion that the putative father took the children and that all respondents are holding petitioner's children without any legal right, the respondents alleged that petitioner was the mother of seven other illegitimate children; that she was neglectful of the physical and mental health and welfare of the children; that she mistreated them; that she left them unattended and improperly cared for by unqualified persons; and that she would not properly feed and clothe them. In addition, in the return filed here, the respondents alleged that by order of the circuit court in the habeas corpus proceeding, custody of the children had been remanded to the putative father. Both cases have been consolidated by us and, by agreement of counsel, further argument on the merits has been waived and the cases have been submitted for our consideration.

We are again confronted with the issue of our jurisdiction on appeal. This has not been raised by counsel, but to it we must address ourselves, as before, sua sponte. In re In Interest of T.G., 455 S.W. 2d 3, 5 [1]. To put the issue another way, shall we consider the appeal from the order in the habeas corpus proceeding of the circuit court, or shall we, as was previously done, dismiss the appeal and then address ourselves to the habeas corpus proceeding raising the same issues brought in this court? On the one hand, we have a long line of decisions holding that no appeal lies from habeas corpus. Howe v. State, 9 Mo. 690 (1846) to Jones v. State, Mo., 471 S.W. 2d 166, 168 [2]. See also In re Hutchinson v. Wesley, Mo.App., 455 S.W.2d 21, 23 (1970). On the other hand, an en banc opinion of the Missouri Supreme Court confers unimpeached authority upon a line of decisions approving the proposition that where the welfare of a child is involved in a habeas corpus proceeding, and the fitness of those seeking custody is raised in the pleadings, "the nature of the inquiry makes the proceeding one of an equitable nature, * * *." In re Shepler, Mo., 372 S.W.2d 87, 91 (quoting Ex parte De Castro, 238 Mo.App. 1011, 190 S.W.2d 949, 951). Obviously, if the proceeding is converted to one in equity, then it can no longer be considered habeas corpus and appeal should lie. Examination of the two remedies supports this conclusion.

The writ of habeas corpus ad subjiciendum is the remedy devised to test the legality of personal restraint. Rice v. Gray, 225 Mo.App. 890, 34 S.W.2d 567, 571 [6]. It is a high prerogative writ (LaGore v. Ramsey, Mo., 126 S.W.2d 1153, 1154) designed for the purpose of effecting the speedy release of persons who are illegally deprived of their liberty or, as in certain instances in the case of minors, illegally detained from the control of those who are entitled to the custody of them. In re Wakefield, 365 Mo. 415, 283 S.W.2d 467, 471 [5, 6]. As commented on in State ex rel. Dubinsky v. Weinstein, Mo., 413 S. W.2d 178, 180, it provides but one of several forums in which child custody may be adjudicated. Aside from divorce, guardianship, juvenile, or habeas corpus proceedings mentioned therein, our courts also recognize an independent equitable proceeding brought for the purpose of determining child custody. Thus, in State ex rel. Stone v. Ferriss, Mo., 369 S.W.2d 244, pending an appeal in a divorce action where both petition and cross-bill had been dismissed with prejudice, the court determined that temporary custody of children could be placed by an ad interim order where a separate count of the cross-bill sought custody based upon their welfare, irrespective of the outcome of the divorce action. "[W]hen minor children are *properly* before any court for any purpose and their welfare is involved, they become wards of that court with respect to the issues of the case and that court has inherent jurisdiction to adjudicate the custody of the children as it deems will best preserve and protect their welfare. Such is the public policy of the state." L.c. 249.

So also State ex rel. Warmuth v. Campbell, Mo.App., 431 S.W.2d 683, 686 [6], where the trial court was allowed to proceed with an adjudication as to child custody on a separate count in the petition after a count for divorce was properly dismissed.

◼ We therefore determine that in habeas corpus proceedings in circuit court involving the custody of minor children, where it appears by the return of respondent or by other pleading that the fitness of any of those having custody or seeking custody is put in issue, the habeas corpus proceeding then becomes an equitable proceeding. In re Shepler, Mo., supra, 372 S.W.2d 87, 91; In re Duncan, Mo., 365 S.W.2d 567, 4 A.L.R.3d 1270; Ex parte De Castro, supra, 238 Mo.App. 1011, 190 S.W.2d 949, 951; Ex parte Badger, 286 Mo. 139, 226 S.W. 936, 14 A.L.R. 286. Being equitable in nature, it has all of the characteristics of an equitable action and is subject to the rules of procedure applicable to equitable actions. In addition, a final judgment or order therein is appealable as in any other case in equity.

◼ We are further impelled to this conclusion after a consideration of the two proceedings before us. The circuit court arrived at its judgment in the case before it after hearings held on three different days, requiring not only the attendance of the parties, but also a pediatrician, social workers and other witnesses. Untold hours spent by the court, court attendants and counsel in the framing of the issues under the pleadings, trial preparation and trial are then incorporated in a transcript containing 306 pages. Upon our denial of appeal, the same inquiry in Cause No. 34,484 would again be instituted in this court, with a duplication of all the effort and time which went into the first proceeding. As an appellate court, we are not equipped to conduct a trial of factual issues. We would therefore have to appoint a commissioner to take the testimony and report to us (In re Richardet, Mo.App., 280 S.W.2d

466) or refer the case back to the juvenile division of the circuit court, whence it came, in accordance with Section 211.051, RSMo 1969, V.A.M.S. (Maupin v. Neels, Mo.App., 451 S.W.2d 381), there to follow the same laborious route. This would favor form over substance and would make of legal procedure a mockery of a salient goal, the efficient and effective disposition of litigation.

◼ Accepting the appeal in Case No. 34,181, we now turn to petitioner's contention in that appeal. It would appear that the only substantial contention is the court erred in failing to award custody of the two children to petitioner because the evidence proved her to be a conscientious mother, with no serious faults, whereas respondents, the putative father, his mother and stepfather, show disrespect for authority and lack of character "by fighting, drinking and general belligerence." Not expecting the matter to be taken up on appeal and not having been thereto requested, the court did not prepare findings of fact or conclusions of law. From our review of the evidence, the court could have found and inferred therefrom that allowing the children to remain in the custody of the father was for their best interest. As can hereafter be seen, this habeas corpus case assumes all the characteristics of an equitable proceeding to determine custody. The original purpose of the writ to determine legality of custody ceases and the thrust of the inquiry is to determine that which is best for the welfare of the children.

E.W., the mother of the two children here involved, has never been married. Including these two, a boy and a girl, she is the mother of nine children, all of whom did live with her. Her oldest child was born when petitioner was thirteen years old. At the time of hearing she was twenty-four years of age. Although she is separated from D.K.M., the putative father, and, according to her, has nothing to do with other men, she goes to a family planning clinic where she obtains birth control

pills. She and the children live in a four-room flat or apartment on the second floor. Access is gained at the back of the building through an alley. Seven of the children sleep in one bedroom. At the time of the hearing, she heated her apartment with the kitchen stove oven. The lady downstairs, who also has nine children, baby-sits two days a week for petitioner, who is employed part of the time. Petitioner receives aid for dependent children, $46.00 for the first and $25.00 for each additional child. She receives no aid for the two who are the subject of this litigation because their father supports them. She has been a constant beneficiary of the welfare department. A person called a "homemaker" who helps with money management and housekeeping problems and instruction in the home has been a frequent and regular visitor in her home for four years. Her home was one of only three, in the homemaker's experience, that had required her services for such a long period of time. Church and school attendance for the older children seems satisfactory.

A pediatrician called as a witness had seen the little boy March 22, 1969. He had chronically infected eczema. Continued medical care cleared up the eczema. He was also placed on allergy medicines and a diet. He gained seven pounds in about six months. When seen the first time, the little girl had a ruptured ear drum caused by an ear infection and seborrheic dermatitis. She also had a cigarette burn on her right arm. On March 3, 1970, the little boy was brought in by the father and grandmother, with first-degree burns on the lateral sides of his thighs. The burns were reported by the pediatrician to the juvenile court of the City of St. Louis. The mother seemed to call with the children at first, but after the first six months of 1969, the father and grandmother brought them in. At the time of the attendance of this witness, November 4, 1970, the children were: "Fat, laughing, skins clear."

K.D.M., the putative father, lived with E.W., the mother, from February, 1967,

until October, 1969, when they separated. Improper advances from another man precipitated the separation, but there were other causes. K.D.M. complained about the way his money was spent. Petitioner would buy "cold cuts and baloney and cookies and ice cream." K.D.M., on the other hand, wanted her to buy "neckbones, beans, ham hocks * * * something that will last." He had to borrow on his pay check to satisfy her overspending, which arose out of poor meal planning and improvident food purchases. She would not keep the house clean or cook. He further complained about her failure to launder dirty clothes for the children and inadequate care given them. When he separated from E.W., K.D.M. moved to his mother's home. He would then pick up the two children and keep them on weekends under an arrangement that apparently caused no real difficulty until Christmas of 1969. He had them for Christmas day. He called before he took them back and found her ready to receive them. When he got to her apartment, no one answered. He then went to her mother's place across the street, but no one answered, although he could see E. W.'s other children looking out the windows and laughing. He then went to the local district police station. A patrol car went back with him, but the only response was from E.W.'s mother, who told K.D.M. to take them back. She said her daughter, E.W., did not want them. In addition to his two children, K.D.M. had another of E.W.'s children with him, who was finally allowed to enter the grandmother's house. Within a few days thereafter, K.D.M. went to the juvenile office and reported what had happened. This office wrote him at a later time to return the children, and this he did, on January 26, 1970. He then picked up the children, about March 1, 1970, and kept them until trial, except for about two weeks in June, 1970. His testimony indicated the petitioner wanted him to take care of them because they were too much trouble. Her testimony indicated a continuing desire and effort to regain custody.

K.D.M., after his separation from petitioner, lived with his mother and stepfather. He is thirty-four years of age. He works at a gasoline filling station, where he makes $130.00 per week. He drinks alcoholic beverages at times, was arrested for peace disturbance several times but never convicted. Married August 10, 1962, he separated from his wife that same year and has not lived with her since. They have no children. His mother and her husband live in Pagedale, where they are buying a home—four rooms, a basement and yard. The children have been living there since the father has had them. The three adult members of the household seem to have a complete understanding and harmonious relation in doing those things necessary for the welfare of the children. There is some one in the home at all times to care for them. The grandmother prepares regular meals and a special, non-allergic diet for the boy. She sees that they are kept clean. They are regularly taken to a pediatrician. The children have their own bedroom. They play in the basement and the yard. The environment, although not perfect, is much more conducive to their current well-being and good future training than that provided by the mother.

We concur with respondents that the court order remanding the children to respondent father was in their best interest and affirm the judgment of the court. In re R.D.H.S., Mo.App., 370 S.W.2d 661. The petition for writ of habeas corpus filed in this court should be dismissed.

After the judgment was entered, the court modified it on motion to allow partial custody to petitioner, E.W., on Wednesday of each week. No appeal was taken from this order, but it, like the other, may be modified from time to time as the needs of the parties and the welfare of the children require.

Because this opinion is contrary to ruling decisions of the Supreme Court of Missouri, as heretofore demonstrated, and for the purpose of re-examining the existing law which prohibits appeals in habeas corpus proceedings involving the welfare of

minor children, we are transferring the two cases to the Supreme Court. We are aware of the concern of some of our brethren that recognition of such a transformation of a habeas corpus proceeding to an equitable child custody case may encourage some to take illegal physical custody of children to bring about a speedy adjudication on the issue of fitness. We further recognize that some of us have come to the conclusion that the use of a habeas corpus proceeding for the purpose of determining fitness should be denied those who, in a sense, by their illegal act, precipitate its use for their possible eventual gain. At the same time, we, as all our courts in the past, have a deep concern in the welfare of children who are our wards in proceedings where their interests will be affected by our judicial determination. We have therefore concluded that conversion of habeas corpus to equity should continue because: 1) the welfare of the child is our prime consideration, not the punishment of the one who transgresses the law; 2) the transgressor may be punished if he violates the criminal law or an order of court; 3) the conduct of those who transgress may be considered by the court, with the other evidence to determine best interest, in awarding custody; and, 4) habeas corpus may arise when a child is not carried off by an over-concerned parent or relative, as in the case of the death of one parent having lawful custody and an attempt by the surviving parent to take custody from others who have actually cared for the child and occupy in fact the position of its parents.

It is ordered that Case No. 34,181 and Case No. 34,484 are transferred to the Supreme Court of Missouri, for the purpose of examining the existing law.

BRADY, C. J., dissents in separate opinion of CLEMENS, J.

DOWD and SIMEONE, JJ., concur.

SMITH, J., dissents in separate opinion.

SMITH, Judge (dissenting).

I respectfully dissent.

Because this matter is to be certified to the Supreme Court for examination and determination of the proper procedure in cases of this type, I feel constrained to state my views on the proper utilization of habeas corpus in a situation such as this. I recognize that it is established by a long line of cases in this state that when "unfitness" of the custodian or "welfare of the child" is raised in a return to a writ of habeas corpus the entire proceeding is converted into one of an equitable nature. In Re Shepler, Mo., 372 S.W.2d 87. The court hearing the habeas corpus action then must determine not simply the legal issue of right to custody, but the equitable issues of "welfare of the child" and "fitness" of the legal custodian. I am firmly convinced that in the predominant majority of cases a habeas corpus proceeding is unsuited for performing that function, and that the disadvantages of using such proceeding in that way far exceed the advantages.

This case presents for decision just one of the problems, i. e.: how does the legal custodian who has just lost custody obtain a review of that decision? That to me is minor compared to the far more serious problem raised by judicial approval of self-help remedies which encourage child-grabbing by one who acts upon his own judgment of what is best for the child. To an increasing degree the habeas corpus applications before this court involve situations where an individual having neither actual nor lawful custody of a child, gratuitously assumes such custody against the wishes of the legal custodian. That is the very situation presented by this case, and not infrequently encountered where the father and mother are divorced.

Under our present procedure the lawful guardian or custodian proceeds in the only way practically available to obtain instant return of the child, habeas corpus. But instant return is not now the province of habeas corpus in child custody. If the interloper alleges facts, which if true, would warrant a determination that the legal custodian is unfit or the welfare of the child requires a different custody the proceeding slows down. Faced with serious allegations of danger to the child the court is normally and properly reluctant to order custody restored to the legal custodian pending full development of the facts and must either leave the child with the interloper or order the child into custodial care pending hearing. By its very nature further proceedings to determine these equitable questions take time, particularly where the writ is pending in an appellate court which is ill-equipped to conduct evidentiary hearings and must refer the matter to the juvenile court under § 211.051 RSMo 1969, V.A.M.S. or appoint a commissioner to hear the case and make recommendations. If the alleged facts of "unfitness" or against the "welfare of the child" are unsupported by evidence or in fact are constructed from whole cloth out of spite, acrimony from an earlier marriage, or delusions, the rightful custodian, usually a parent, has been deprived of the custody during all these proceedings. And, more important, the child has been removed from his established environment into strange surroundings with whatever traumatic effects that may cause. Nor do I understand that the right to raise fitness in a habeas corpus proceeding is limited to persons having an ostensible interest in the child involved. It apparently would apply with equal force to a total stranger who, for whatever reason, decides that the parents or legal custodian of a given child are neglecting the child and who is willing to risk the possibility of prosecution for kidnapping in order to correct the situation. I cannot believe that the actual custody of a child for any period of time should be allowed to depend upon such opinion or whim. I find support for that conclusion in the language of § 211.021 RSMo 1969, V.A.M.S. (which admittedly applies only to juvenile court proceedings): "Legal custody may be taken from a parent only by court action . . ."

Of course, much of the above might of necessity have to be permitted in order to protect children if there were no other

available judicial protection. But in all but a very few cases there is such protection available. In the divorce situation there is a continuing jurisdiction in the trial court to modify custody awards upon a showing of change of circumstances, which would certainly include unfitness of the designated custodian.

But even beyond that remedy the legislature has provided for far ranging judicial protection of children under the Juvenile Code. Chapter 211, RSMo 1969, V.A.M.S. Under § 211.031 the juvenile court has exclusive original jurisdiction where parents or other persons legally responsible for the care and support neglect or refuse to provide it or where the "behavior, environment or associations of the child are injurious to his welfare or to the welfare of others." Section 211.081 authorizes "any person" to inform the court that a child appears to be within the purview of § 211.031 and upon such information the "court shall make or cause to be made a preliminary inquiry to determine the facts . . ." Based upon that inquiry the court may authorize the filing of a petition by the juvenile officer. Section 211.101 provides that where necessary the judge may authorize the officer serving the summons to immediately take the child into custody. Under § 211.181 the court has a wide range of choices available in making a disposition of the child. The entire statutory plan is geared to provide immediate protection to children whose plight is brought to the attention of the court. I cannot presume that the juvenile courts of this state are remiss in their proceedings under this statute or that where a dangerous situation exists they fail to act with dispatch.

There may be situations where neither the modification proceedings in the divorce court nor the juvenile court procedures are adequate. Such a situation was presented to this court and the supreme court in In Re Duncan, Mo., 365 S.W.2d 567. There the persons having actual custody were maternal grandparents. The legal custody had been awarded to the father in an un-contested divorce proceeding. The grandparents, of course, had no standing in the divorce court to seek modification of the decree as they were not parties to that suit. Since they already had physical custody of the child it might be argued that the child was not neglected within the meaning of § 211.031(1) (a). From a practical standpoint it may well be that where the child was put into the custody of the respondent in the habeas corpus proceeding by one or both parents, and has been in that custody for some period of time, relief through the juvenile court is not available. As I understand Duncan, the determination that fitness of the father should be determined in the habeas corpus proceeding was based upon the absence of any other forum for determining the issue. 365 S.W.2d 567 [3, 4]. A similar fact situation and result is found in In Re Shepler, Mo., 372 S.W.2d 87. Where in fact no other forum exists fitness can and should be determined in the habeas corpus proceedings. And of course in both Duncan and Shepler the respondents in the habeas corpus proceedings were persons who had actual custody of the children and had had for some length of time. The continuation of custody in the grandparents during the determination of the habeas corpus proceeding did not involve an uprooting of the children from their normal environment.

Unfortunately the language used in both Duncan and Shepler is not restricted to the particular and somewhat unusual fact situations there before the court. Those cases instead seem to indicate that in every habeas corpus proceeding involving custody of children, if fitness or welfare is raised the proceeding becomes an equitable one, and an evidentiary hearing is required. In view of the facts before the court in those cases I do not believe (despite the language used) that they require such conversion (from legal to equitable) in every habeas corpus case. Where there is a forum practically available to the respondent to have fitness and welfare determined I do not believe those defenses should be available in habeas corpus.

In the case at bar respondent has obtained the children without authority or right. He has done so simply because he wants them and has concluded the mother is unfit. If she is, respondent should have the juvenile court determine that fact. But he should not be permitted to make such determination by himself, carry it to fruition by unlawfully grabbing the children and then defend his unlawful action in the habeas corpus proceeding through a charge of unfitness. In this and in other self-help cases I would hold the defense unavailable and order custody returned to the parent or legal custodian forthwith. I believe it is a rare case where one having no legal right to custody should be allowed to defend his gratuitous assumption of custody upon the basis of the unfitness of the legal custodian.

As to the question of review, I concur that appeal is preferable to a new proceeding in habeas corpus. As heretofore indicated we are ill-equipped to hold evidentiary hearings. Where such hearing has already been held I find it far preferable to review the record of that hearing rather than order the case referred for another hearing and recommendation which we would then review.

CLEMENS, Judge * (dissenting).

I must dissent from the principal opinion insofar as it holds that an appeal lies from a judgment denying relief in a habeas corpus case. I agree that a habeas corpus petitioner who is aggrieved by denial of her petition in the circuit court should have a remedy—and she has. This by filing a new application for the writ in this court. Jones v. State, En Banc, Mo., 471 S.W.2d 166 [3]. The petitioner has done so here. The adequacy, if not the advantage of that course, is readily apparent. An appeal from an adverse ruling in the circuit court would involve all the time-consuming and costly steps of obtaining a transcript, printing briefs, and waiting out the docketing

process. By contrast, a new application in this court affords a prompt and inexpensive remedy. The no-appeal rule is sound.

Earlier, petitioner attempted to appeal from the circuit court's order remanding her children to respondents. Initially we dismissed that purported appeal, but thereafter withdrew that opinion. In doing so the court strayed from the beaten path because the respondents' return to our writ in the "second case," (No. 34,484), alleged he was holding the children by virtue of an order of the Circuit Court of St. Louis County remanding the children to respondents in the original habeas corpus case. We considered this—tentatively at least—as res judicata. So considered, we felt the children and their mother had been deprived of any remedy to question that original order. This hinged on our assumption that the original order *remanding* the children to respondents is res judicata. It is not. An order *discharging* a petitioner is res judicata. (Ex parte Clark, infra). But an order remanding a petitioner, as here, is not.

In capsule, the rule of res judicata in habeas corpus is this: "A plea of estoppel by record in a habeas corpus case is good on the same facts where the prisoner has been discharged, but is bad where the prisoner has been remanded, as here . . . The discretion of one judge in remanding the prisoner does not bar the discretion of another in discharging the prisoner on habeas corpus. . . . And this, too, no matter what court has theretofore denied relief, unless it be a court of superior jurisdiction." Ex parte Clark, 208 Mo. 121, 106 S.W. 990, 1.c. 996.

Ex parte Lofts, Mo.App., 222 S.W.2d 101 [1, 2] was an action in the Springfield Court of Appeals by mother to free her child from restraint by habeas corpus. Respondents pleaded a prior judgment of the circuit court denying the mother's petition. The court said: "We cannot agree with the defendants that the matters involved

* Commissioner when case submitted.

in this habeas corpus proceeding have been adjudicated by the Circuit Court of McDonald County, Missouri. This court has original jurisdiction to issue and entertain proceedings on writs of habeas corpus and the prior determination on the same issues in the Circuit Court of McDonald County, which terminated by the court refusing to discharge the person detained, is not res adjudicata." See also Ex parte Smith, Mo.App., 200 S.W. 681.

The circuit court ruling against petitioner in no way affects her right to our writ of habeas corpus.

Accordingly, I think we should adhere to our original opinion denying the petitioner's right to appeal in the first case and should proceed to adjudicate the new petition filed here.

BRADY, C. J., dissents for the reasons above stated.